ALBANY,
Feb. 1806.

The People
v.
Barrett and
Ward.

faction of the court, in order to entitle the defendant to the extraordinary interposition, now solicited in his favour.

## The People *against* Barrett and Ward.

A person tried and convicted on an indictment, afterwards discharged, because a juror had been improperly withdrawn, was again tried on a second indictment, for the same offence, and plead *autrefois acquit*, in bar ; it was held that as the first indictment was *erroneous* the plea of a *former acquittal* was no bar to the second.

* See 2 *Caines* 100, 304.

THE defendants were indicted, at the general sessions of the peace, in *Washington* county, in *September*, 1803, for a conspiracy, and were brought to trial on that indictment, at the court of *oyer* and *terminer*, held in that county in *June*, 1804. The district attorney, discovering some material evidence, which could not be immediately obtained, moved to withdraw a juror, which was granted by the court, without the consent of the defendants. At a subsequent day, the defendants were again arraigned, tried, and found guilty on the same indictment. In *February* term, 1805, upon a case submitted, this court decided, that judgment must be arrested on that conviction, and the defendants discharged, on the ground that the juror was improperly withdrawn, by order of the court of *oyer* and *terminer*, on the first trial.* After the defendants had been thus discharged, they were again indicted for the same offence, at the *oyer* and *terminer* in *June*, 1805. To this indictment the defendants plead *autrefois acquit*, and the district attorney replied *nul tiel record.*

The indictment on which the defendants were first tried, was, in substance, as follows : That the defendants, wickedly devising, and intending to defraud one *Oliver Darren* of his money, goods, &c. on the 11th day of *June*, 1803, at *Greenwich* in the county of *Washington*, wickedly, fraudulently, &c. *did conspire to cheat*, the said *O. D.* of his money, goods and chattels, under a false and deceitful color and pretence of *Barrett's securing* to *be paid unto the said O.*

*D.* 341 *dollars and* 30 *cents, by indorsing and transferring to the said O. D. a certain promissory note, made by one Medad Gun,* by which note the said *Medad* promised to pay *Barret,* or order, 341 dollars and 30 cents on demand: and that the said *Barrett,* in pursuance of and according to the *conspiracy aforesaid,* did, on the 1st day of *September,* in the year aforesaid, *wickedly and fraudulently pretend,* that the said *Medad* was solvent, and able to pay the said note, and that *O. D.* would be in no danger of losing the sum of money contained in the said note, by taking the assignment thereof, at the risque of the said *O. D*'s collecting the contents from the said *M. G.* and without resorting to the said *Barrett* as indorsor : and that the said *Ward,* according to the conspiracy aforesaid, afterwards, to wit, on the 1st day of *September,* at *Greenwich* aforesaid, falsely and deceitfully represented to the said *O. D.* that he, the said *Ward,* was the said *Medad Gun,* the maker of the said note, and that the said *Ward,* then had $200, in money, for the purpose of paying in part, the contents of the said note, and that in case the said *O. D.* would purchase the said note of the said *Barrett,* he the said *Ward,* would thereupon immediately pay the sum of $200 to the said *O. D.* in part payment of the said note, and would pay the remainder in a short time thereafter. The indictment further charged, that *Barrett,* according to the said conspiracy, assigned the said note in the manner above stated ; and that *Barrett,* in pursuance of the said conspiracy, under false pretences, did wickedly and fraudulently obtain from the said *O. D.* one horse of the value of $30, a waggon of the value of $30, &c. of the goods and chattels of the said *O. D.* whereas, in truth, the said *Medad* was not solvent and able to pay, &c. and that the defendants, at the time, well knew the same ; and whereas, in truth, the said *Ward* was not the maker of the said note, nor liable to pay the same, as was falsely pretended, &c. and that the defendants well knew the same, &c.

The question as to the validity of the plea of *autrefois acquit,* was brought before the court on a case made.

The case was argued, in *August Term* last, by *Russell*, attorney for the *people*, and *Crary*, for the defendants.

The points contended for by *Russell*, were, 1. That the offence charged in the first indictment does not appear to be the same as the one laid in the second.

2. That the former indictment was erroneous, and there- fore no bar to a second prosecution.

The judges, not being unanimous, now delivered their opinions *seriatim.*

TOMPKINS, J. In discussing the points in this cause, I shall take for granted, what was not controverted upon the argument, that the proceedings on the first trial of the defendants, amounted to a general verdict of acquittal.

The principal grounds upon which the first point is attempted to be supported, are, that in the first indictment, it is stated, that the defendants conspired to defraud one *Darren* of his *money*, goods and chattels, whereas, in the second, they are charged with conspiring, to defraud him of his goods and chattels only ; that the date of an indorsement of the note, mentioned in both indictments, is mentioned in the former to have been on a particular day, and in the latter, on a different day. These variances, between the record of acquittal, and the indictment to which it is plead, are wholly immaterial. The same evidence would have supported either indictment. Testimony of defrauding *Darren* of his money, would have been sufficient to support the charge for defrauding him of his goods and chattels. And the indorsement of the note, for aught that appears, being in blank, according to the customary mode of negotiating promissory notes, it was discretionary with the prosecutor, to allege the indorsement to have been made at any day after the date of the note, of which the defendants could not take any advantage. If the nature of the crime be substantially the same, a variance between the indictments, in other respects, may be helped by averments in the plea. The cases in which variances have been thus helped, as mentioned in *Hawkins*, chap. 25, § 3, and in *Pulton, de pace regis*, title indictment, § 39 and 40, are much stronger than

ALBANY,
Feb. 1805.
The People
v.
Barrett and
Ward

the present. It is there laid down, that the party indicted, may plead the former acquittal, and notwithstanding a variance, may, by averments, shew the truth of the case, and be discharged. In this case, the conspirators, the facts of conspiracy, the security in relation to which the fraud is charged, and the person intended to be defrauded, are the same, and in every substantial matter, the two indictments coincide. The first point, therefore, is untenable.

The second point is one of great importance. The general principle established in the history, and reports, of the pleas of the crown, is, that no one shall be twice put in jeopardy for the same offence.

The doctrine here contended for, originated with *Vaux's* case, 4 Co. 44, in which it is decided, that unless the party has been lawfully acquitted, upon a sufficient indictment for the same offence, he cannot have the benefit of the plea of *autrefois acquit.* By a lawful acquittal, must be understood an acquittal by a general verdict. If, therefore, the accused escape a trial by the entry of a *nolle prosequi*, by quashing the indictment, upon an issue of *demurrer*, or in *abatement*, he is not *lawfully* acquitted, and cannot in those, and the like cases, evade a trial by the country, for the same offence. The same observation applies to the cases of withdrawing a juror *ex necessitate.*

It may perhaps be questioned, whether, by an insufficient indictment, in the authorities relating to this subject is not meant, one which states facts and circumstances that do not amount to an offence, or which wants the legal and technical words to denote the crime. Thus in *Pulton title*, *Indict.* §42, it is laid down, that the plea of *autrefois acquit*, is not a good plea to an indictment for felony, unless the record vouched does contain *sufficient matter of felony.*

In 2 *Hale*, 247, it is also said, that *autrefois acquit* was not a good plea in the case there mentioned, because, the first indictment was *insufficient*, for it contained *no matter of felony*. But on examination, the cases cited do not appear to me to apply to the present case, because

ALBANY,
Feb. 1806.

The People
v.
Barrett and
Ward.

* Vol. 2, 503.

the defendants availed themselves of the defects in the indictment, or finding. In *Vaux's* case their was not a general verdict of not guilty, on the first trial; but his counsel took advantage of an insufficient finding in the special verdict. In *Cogan's* case, *Leach*,* where there was a verdict of not guilty upon the first indictment, the plea in bar to the second did not prevail, because the offences were not the same, which is the reason assigned by the court for their decision.

The defendants in this cause did not avail themselves of any defects in the first indictment, but were acquitted, because the public prosecutor had not sufficient proof at the time to establish the charge against them. To allow him now, by pointing out defects in his own pleading, to place the defendants in jeopardy a second time, would contravene a salutary maxim, that no one shall take advantage of his own wrong. The defects, if any, in the former indictment, are to be attributed to the district attorney; and if he can take advantage of them, when will the peril of the defendants cease? A second, third, or fourth acquittal will not secure them, if the ingenuity of the prosecutor discover defects in the antecedent indictments. I am inclined to think the presumption, that the court will not render judgment upon a conviction, if the indictment be defective, ought not to have much weight at the present day. As offenders appear by counsel, or have counsel assigned them by the court in almost all cases, unless advantage is taken by them or their counsel, the court, will seldom of its own motion, seek for defects in an indictment where there is a conviction, if an offence be substantially stated. Since, therefore, the matter in the first indictment, is substantially the same for which they are arraigned the second time; since the defendants took no advantage of any defect in the indictment on their first trial, and have been acquitted by proceedings which this court considered as equivalent to a general verdict of not guilty, I think their plea constitutes a good bar to the second indictment, and that they ought therefore to be discharged.

SPENCER, J. It is contended that owing to the imperfections in the first indictment, their present plea is not a bar. The case of *William Vaux*, 4th *Rep.* 44. is a leading case. *Vaux* had been indicted for poisoning *Nicholas Ridley*; a special verdict was found, and judgment of acquittal was given. He was indicted again for the same murder, and plead the former acquittal. On this plea it was resolved, that when the offender is discharged on an insufficient indictment, there the law not having had its end, nor the life of the party ever in danger, he may be again indicted, and tried; under this opinion *Vaux* was tried a second time, convicted and executed. This case is sanctioned by *Hale* and *Hawkins*,* the latter of whom says, " he takes it to be settled, that where-" ver the indictment is so erroneous, for want of substance " in setting out the crime, that no good judgment could be " given on it, against the defendant, an acquittal is no bar to " a subsequent indictment, because, in judgment of law, the " defendant never was in danger."

The defendants' counsel has obviated all the exceptions taken, to the first indictment but one. There appears to be no *venue*, either expressly, or by implication, as to the fraudulent representations made by *Barrett* to *Darren*, that *Gun*, the maker of the note, imposed on *Darren*, was in solvent circumstances. This representation is the very *git* of the indictment; and had the defendants been convicted on it, I should have held the judgment liable to be arrested; for it is a fundamental principle in criminal law, that every material fact, must be clearly and fully set out, so that nothing can be taken by intendment. It then does not appear that the essence of the offence was committed in the county of *Washington*, or even within the state; for this reason I conceive the first indictment radically defective, and, consequently, that the defendants are bound to plead over to the second.

THOMPSON, J. From the case presented to the court, we are to consider the defendants as acquitted, at a former trial, upon an indictment for the same offence, for which they now stand charged; and the two questions presented for decision are, 1. whether the former indictment was ma-

ALBANY, Feb. 1806.

The People v. Barrett and Ward.

* 2 Hale, 248.
4 Hawk. 317.

ALBANY,
Feb. 1806.

The People
v.
Barrett and
Ward.

terially defective; if so, then, 2. whether an acquittal thereon is a bar to the present prosecution.

I think the first indictment defective, for want of a *venue* in that part which charges *Barrett* with making a fraudulent pretence, pursuant to the conspiracy previously entered into between him and *Ward.* It is well settled, that an indictment ought to contain a proper *venue*, for the purpose of shewing where the offence was committed. (2. *Hawk.* ch. 25. § 83. 5. *T. R.* 162.) Every act material to constitute the offence charged, must be alleged to have been done at some place. The fraudulent pretence practised by *Barrett* was a material allegation, and required a *venue* as much as any part of the indictment.

Will an acquittal then, on such a defective indictment, discharge the party accused from any further prosecution for the same offence? I think not. It appears to me that the law on this subject has been long since settled, and were I disposed to question the propriety of the principle, I should not feel myself at liberty to overturn what I have considered an established doctrine. The rule as laid down by Serjeant *Hawkins* in his valuable treatise on criminal law, (B. 2. ch. 25. § 8) and which is supported by the authorities there cited, is plain and explicit. He says, " I take it to be settled at this day, that wherever the indictment or appeal whereon a man is acquitted is so far erroneous, either for want of substance in setting out the crime, or of authority in the judge before whom it was taken, that no good judgment could have been given thereon against the defendant, the acquittal can be no bar of a subsequent indictment or appeal." The reason assigned for it is " because in judgment of law, the defendant was never in danger of his life from the first. For the law will presume *prima facie*, that the judges would not have given a judgment which would have been liable to have been reversed." Without further examination, therefore, I am satisfied that the plea of *autrefois acquit*, is no bar to the present prosecution.

LIVINGSTON, J.  The plea of *autrefois acquit* is thought not to apply here; because, the first indictment is erroneous, and the second, not for the same offence.

If an opinion had been pronounced, at the instance of the party, on the insufficiency of the first bill, either on a special verdict, or after a general finding, on a motion in arrest of judgment, this case would bear some resemblance to, and might be governed by that of *Vaux*,\* which has given rise to all the *dicta* on this subject. *Vaux* was indicted a second time for murder. He pleaded a former acquittal, but it appearing that on the first trial there had been a special verdict *only*, upon which judgment was rendered in his favour for an insufficiency in the indictment, it was held that the plea was bad, and *Vaux* was again tried, convicted, and hanged. The court, in giving its opinion, is made very gravely to say, that the prisoner's life, although tried for murder, had *never* been in jeopardy, because, the first indictment was imperfect, and yet not one counsel in a hundred would have had discernment enough to point out the defect, which, for that time, had saved him from the gallows.

ALBANY, Feb. 1806.

The People v. Barrett and Ward.

\* 4 Co. 44.

Without denying the law, though not at all satisfied with the reason on which it is founded, it is totally inapplicable to the question before us. In *Vaux's* case, an acquittal had been pronounced by the court, at the prisoner's instance, *before* a second bill was presented, and had thus become matter of record, and formed a part of his plea. Even thus far, a court should very reluctantly go ; for to tell a man who had been within an ace of being executed, that his life had been in no danger at all, savors a little of refinement, and was sporting, to say the least, with the feelings of the prisoner.

But without disputing a decision, which, notwithstanding the sayings of several learned and great men, to which it has given rise, does not appear ever to have been practised on in *England*, it will be sufficient to shew a very great and essential difference between the case of these defendants and that of *Vaux*. The jury had *not acquitted* nor given *any opinion* on his guilt, but had referred the whole matter to the court. *Barrett* and *Ward* on the contrary, are found NOT guilty by the jury themselves ; for the discharge on the motion in arrest of judgment is considered by this case, as

Vol. I.                    L

a general verdict of acquittal. *Vaux* laid hold of a defect in the indictment. These defendants have availed themselves. of no such imperfection, if any there were, nor has any judgment to that effect been pronounced. This case, in short, presents the novel and unheard of spectacle, of a public officer, whose business it was to frame a correct bill, openly alleging his own inaccuracy, or neglect, as a reason for a second trial, when it is not pretended that the merits were not fairly in issue on the first. That a party shall be deprived of the benefit of an acquittal by a jury, on a suggestion of this kind, coming too from the officer, who drew the indictment, seems not to comport with that universal and humane principal of criminal law, " that no man shall be brought into danger more than once for the same offence." It is very like permitting a party to take advantage of his own wrong. If this practice be tolerated, when are trials of the accused to end ? If a conviction take place, whether an indictment be good, or otherwise, it is ten to one that judgment passes ; for if he read the bill, it is not probable he will have penetration enough to discern its defects. His counsel, if any be assigned to him, will be content with hearing the substance of the charge, without looking farther, and the court will hardly, of its own accord, think it a duty to examine the indictment to detect errors in it. Many hundreds, perhaps, are now in the state prison on erroneous indictments, who, however, have been fairly tried on the merits. But reverse the case, and suppose an acquittal to take place, the prosecutor, if he be dissatisfied and bent on conviction, has nothing to do, but to tell the court that his own indictment was good for nothing ; that it has no *venue*, or is deficient in other particulars, and that, therefore, he has a right to a second chance of convicting the prisoner, and so on *toties quoties*.

Of the alleged imperfection in this indictment we should never have heard, if the verdict had been the other way. I am glad there is not one precedent which compels me to listen to this application ; a power to try *ad infinitum*, as often as some latent defect be discovered in an indictment, may not only be abused in the hands of an attorney general,

but is unsafe in those of a court. If judges have the power
of putting a party on his defence a second, and a third time,
because of imperfections of this kind, there is no man who
may not, if the court please, be finally convicted, or cru-
elly harrassed by such a course of proceeding. It is a suf-
ficient argument against the assumption of such power, that
it is subversive of the trial by jury, and that it is liable, in
seasons of political conflicts, to great abuse. Judges are
but men, and not more secure than others against impro-
per influence.

The objection, that the second indictment is not for the
same offence, is not founded on fact. Both prosecutions
are for the same conspiracy. This was conceded on the
argument, and the indictments correspond in every essen-
tial point. It would, therefore, be little better than a mock-
ery to permit trials to proceed as often as by a slight
change of phraseology, or ingenuity in a district attorney,
the last indictment may be made to vary from the preceding.
In my opinion, the defendants are entitled to their discharge.

KENT C. J. The first question that arises upon this case,
is, whether the indictment of 1803 was erroneous, so that a
good judgment could not have been given against the de-
fendants, if they had been convicted ? The indictment does
not contain a *venue* in that part of it, which avers that the
defendant, *Barrett*, made a *fraudulent pretence*, in pur-
suance of the conspiracy, previously, and at another day
formed. This is a material allegation, and it required a *ve-
nue*, as much at least, as any part of the indictment ; for the
act done in pursuance of the conspiracy, was the *git* of the
charge. This omission, as it appears to me, was an error,
for which the judgment to have been given thereon, might
have been arrested or reversed. (2 *Hawk chap.* 25, § 83 ; and
the *King* v. *Matthews*, 5 *Durnf.* 162.)

It is very questionable, also, whether the indictment be
not bad in another respect. The *specific* pretences by which
the fraud was to be effected, are not laid as having been
agreed upon, at the time of the conspiracy. The conspiracy
is laid generally, that they conspired to cheat, by the transfer
of a note ; but the false tokens by which that was effected,

ALBANY,
Feb. 1806.

The People
v.
Barrett and
Ward.

ALBANY,   appear to have been the *separate* and voluntary acts of each
Feb. 1806.  defendant by himself, and may not have been previously
The People  known to each other.    The defendants are only answerable
v.          upon such a charge, for acts, to the doing of which, they had
Barrett and *jointly* conspired.    Unless the acts were done in pursuance
Ward.       of a joint agreement, they became the *distinct acts* of each
individual, though they may have conduced to effect a *joint
object.*    It is not necessary, however, to give any strong, or
decided opinion upon this point, since the want of a *venue*
appears to be an objection more clearly fatal.

The next question is, whether the defendants can law-
fully plead an *acquittal* upon an erroneous indictment, in
bar of a new prosecution for the same offence?

The general rule of law, as laid down by serjeant *Haw-
kins, (Vol.* 2, *ch.* 35, *sect.* 8.*)* and which he takes to be
settled at this day, is this, " that wherever the indictment,
" whereon a man is acquitted, is so far erroneous, (either
" for want of substance in setting out the crime, or of autho-
" rity in the judge, before whom it was taken) that no good
" judgment could have been given upon it against the de-
" fendant, the acquittal can be no bar of a subsequent in-
" dictment, because in judgment of law, the defendant was
" never in danger of his life from the first; for the law will
" presume, *prima facie,* that the judges would not have given
" a judgment which would have been liable to have
" been reversed." *Vaux's case (4 Co.* 44.) is generally re-
ferred to as as the leading authority in support of this posi-
tion.    He was indicted for murder for poisoning one *Rid-
ley,* and plead not guilty ; he was tried, and the jury gave a
*special verdict,* and the court gave judgment thereon, that
the facts, as set forth in the verdict, did not support the in-
dictment, and the defendant was discharged.    He was after-
wards indicted again, for the same crime.    The indictment
being removed into the K. B. he plead the former acquittal
in bar, and it was resolved by the court, that the first indict-
ment was insufficient, and the plea of *autrefois acquit* was
no bar ; for that plea meant only a *lawful acquittal,* or con-
viction ; that if the conviction or acquittal was not lawful,
his life was never in jeopardy ; and because the indictment

was insufficient, he was not *legitimo modo acquietatus*. A case in the year books of 19 *Edw.** 4, was referred to, in support of the decision, and *Vaux* was accordingly tried again, convicted, and executed. This case fully supports the doctrine in *Hawkins;* and if good law, (of which no doubt has ever been entertained in the books) it goes completely to overrule the plea in the present case. An acquittal by special verdict, and judgment thereon, is equal to an acquittal by a general verdict of not guilty, and certainly as operative as the acquittal before us. This case of *Vaux* is cited, and recognized as good law, in Sir *Mathew Hale's* pleas of the crown, *(Vol.* 2, 248.*)* and a distinction is there taken between an erroneous judgment, arising from error in the court, upon a verdict which is held to be conclusive upon the *King*, till reversed, and a judgment of acquittal, in a case where the indictment itself, which is the foundation of the action, is bad; that in the latter case it shall be presumed, that the judgment of acquittal was given upon the defect in the *indictment*, and not upon the *verdict*, for the judgment is the same in both cases, and the judges are bound to look into the indictment. *Brooke*, in his abridgement, *(Corone 35,)* cites 9 H. 5, 2, and says, it was agreed, that if a man be arraigned of felony, and acquitted without original, he shall be again arraigned at the suit of the *King ;* but where he is arraigned upon good original, as good appeal, or indictment, and acquitted, and the *mesne* process or return be ill, there he shall not be again arraigned.

I am satisfied, therefore, that the law is not now to be questioned, that if the indictment be defective, so that no good judgment could have been given upon it, an acquittal upon such indictment is no bar.

The present plea must be overruled, and the defendants plead *de novo.*

Plea overruled.