THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* KENNETH YAEGER, Defendant-Appellee.

Third District    No. 79-358

Opinion filed May 29, 1980.

416

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Robert Agostinelli and Stephen Omolecki, both of State Appellate Defender's Office, of Ottawa, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

Ten indictments were returned in the Circuit Court of Peoria County charging the defendant Kenneth Yaeger in summary with delivery of a controlled substance, unlawful delivery of a substance represented to be a controlled substance, and unlawful delivery of cannabis. On the defendant's motion all 10 indictments were dismissed for the failure of the State to comply with discovery. Upon a rehearing in the trial court four of the indictments were reinstated. The State appeals in a separate case *People v. Yaeger* (1980), 84 Ill. App. 3d 481, from the dismissal of five of the 10 indictments. The State has conceded that one of the other six dismissed indictments was a duplicate charge of the same offense and was properly dismissed (circuit court No. 75-CF-5111), and no appeal has been taken from the dismissal of that indictment.

This appeal concerns the dismissal by the trial court of the four reinstated indictments. These four indictments were dismissed a second time by the trial court on the basis of post-indictment delay in apprehending and arresting the defendant. The State has appealed from the last dismissal pursuant to Supreme Court Rule 604(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 604(a)).

A resolution of the issues presented in this appeal requires a detailed summary of the procedural facts that led to this appeal. To facilitate presenting the facts in a meaningful fashion we have prepared a table detailing the offenses charged, the dates on which they were allegedly

committed and the corresponding appellate and circuit court numbers for identification:

| Designation in this opinion | Circuit Court Number | Charged Date of Offense | Offense charged | Appellate Court Number |
|---|---|---|---|---|
| A. | 75-CF-3677 | 4/9/75 | Charging delivery of a substance containing MDA | 79-358 |
| B. | 75-CF-3678 | 4/10/75 | Two counts—charging delivery of a substance containing MDA | 79-358 |
| C. | 75-CF-3679 | 5/21/75 | Charging delivery of a substance represented to be a controlled substance | 79-358 |
| D. | 75-CF-3744 | 4/11/75 | Charging delivery of a substance represented to be a controlled substance | 78-405 |
| E. | 75-CF-3761 | 5/21/75 | Charging delivery of a substance containing Phenmetrazine | 78-405 |
| F. | 75-CF-3848 | 5/21/75 | Charging delivery of a substance containing MDA | 78-405 |
| G. | 75-CF-3868 | 4/16/75 | Charging delivery of a substance containing cannabis | 78-405 |
| H. | 75-CF-3869 | 4/23/75 | Charging delivery of a substance MDA to Glenn Perkins | 78-405 |
| I. | 75-CF-5111 | 5/23/75 | Charging delivery of a substance containing MDA to Jon Conley | [1] |
| J. | 75-CF-5112 | 4/23/75 | Charging delivery of a substance containing MDA to John Conley | 79-358 |

Indictments D, E, F, G, and H were dismissed by the trial court in consequence of the State's failure to comply with discovery. The State's separate appeal, No. 78-405, is on the propriety of the dismissal of those indictments for the reasons given by the trial court.

The trial court ultimately also dismissed indictments A, B, C, and J for the reason that the post-indictment delay in arresting defendant denied him his constitutional right to a speedy trial. These four

---

[1] No appeal was taken because the State concedes this indictment charged the same offense as the indictment in Circuit Court No. 75-CF-5112.

indictments, the subject of this appeal, were returned on June 19, 1975. The defendant testified that he had lived in the Peoria area approximately from May through August of 1975 with his mother. He recalled that he left Peoria in August of 1975 and moved to Missouri where he lived with his father. He further testified that prior to his arrest on January 30, 1978, he was unaware that charges were pending against him and had never been contacted by any law enforcement official informing him of the charges against him. While in Peoria the defendant had worked at Sander's Pool Hall and the Slipper Club. His mother had also worked at the Slipper Club.

The defendant testified that while living in Missouri with his father he had not tried to avoid law enforcement officers. In fact he maintained the same address in Missouri with his father throughout the whole time. He had bank accounts in the area; he received veteran's benefits through a local Missouri employment office. He also maintained contact with the Veterans' Administration. While in Missouri he held a Missouri driver's license, was registered to vote, and was employed by local farmers. His driver's license listed his father's Missouri address as his address. Although he left Peoria without telling his mother where he was going, he did notify his mother that he was living with his father in Missouri. Defendant's mother knew the defendant's father's address. Additionally, he had filed his military discharge papers with the Peoria county recorder, which gave defendant's father's address as his address upon separation from the military service.

The delay in arresting the defendant in this case was 31 months. The delay in arresting the defendant occurred after the indictments charging him, and consequently the right to a speedy trial pursuant to the sixth amendment to the United States Constitution made applicable to the states through the due process clause of the fourteenth amendment is involved in judging the correctness of the trial court's dismissal of the indictments A, B, C, and J. In *Barker v. Wingo* (1972), 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182, the Supreme Court identified four factors which, although not conclusive, should be considered when a defendant claims a violation of his constitutional right to a speedy trial. Those factors are (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant as a result of the delay. The Supreme Court of Illinois has relied upon the *Barker* case and has adopted the same four factors to be applied in deciding speedy trial cases. (*People v. Bazzell* (1977), 68 Ill. 2d 177, 369 N.E.2d 48.) The *Barker* court further concluded that none of the four factors were necessary or sufficient to a finding of a deprivation of the constitutional right to a speedy trial.

The length of the delay, 31 months, is essentially undisputed.

Furthermore, the State has conceded that the defendant's assertion of his right to a speedy trial is irrelevant in this case because the indictments were suppressed and the defendant did not know of the warrants for his arrest. We agree with the State's concession. In issue are only the reason for the delay and the prejudice resulting to the defendant from the delay.

The State contends that the reason for the delay was the absence of the defendant from the Peoria area. The defendant argues that the delay was occasioned by the failure of the police to exercise due diligence in searching for the defendant. We agree with the observations of the trial court in rendering a decision to dismiss the four indictments because the long delay violated the defendant's right to speedy trial, when he said "there was no evidence exactly as to what attempts were made to arrest this particular defendant." The State did present testimony from police officers as to the manner in which the persons in this drug dragnet, whose indictments along with defendant's were suppressed, were sought out. Specifically, after the indictments were returned and capiases for the drug offender were issued, the names of those not immediately arrested were put on a list and given to city police officers to look for them. The names of the same drug offenders were also put into a computer. The testimony also indicated that generally when county police officers are given a capias on an indictment they check the address given and with the post office if a defendant is not at the address given. If there is no address given on the capias then the police do not regularly check with anyone about an arrestee. The testimony showed that if the arrest warrant has no address for a defendant the police do not look for an address but merely put the defendant's name in a crime computer. The trial court termed the police failure to promptly arrest the defendant in this case as "a lack of professional responsibility to actively seek an indicted person [and] afford that person a speedy trial." We do not believe that the failure to find and arrest this defendant for 31 months was incompetence, but we do believe it violated defendant's right to a speedy trial.

Despite the State's argument that the defendant fled from Peoria to escape being arrested, we do not place such an inculpatory motive upon his leaving the area. Absent his knowledge of the indictments and arrest warrants, we will not attribute a motive to flee to defendant's leaving the area. His evidence established that he left even before the indictments, which were suppressed, were returned. As aforesaid the defendant's actions and life style in Missouri are not indicative of a fugitive. He worked, had a driver's license in Missouri, registered to vote, and received unemployment benefits. He told his mother back in Peoria where he was and collected veteran benefits knowing that he had filed his military discharge papers in the Peoria county recorder's office and that those papers showed his address in Missouri.

The State has argued that it did make a specific attempt to locate the defendant by contacting his mother once and that this attempt was not fruitful. This attempt is easily discredited. Officer Terrell, who knew the defendant and his mother, inquired of her as to the defendant's whereabouts at a purely accidental meeting when the officer was present on another call. Officer Terrell was unsure of even the year in which it occurred. Cross-examination revealed that his version of where he was told the defendant was living conflicted with the testimony of the defendant's mother and sister, who were both present at this accidental meeting. Officer Terrell testified that he was told that the defendant was in a southern State, possibly Louisiana. However, his uncertainty as to the exact details of this chance meeting expressed by Officer Terrell lessens the weight of his testimony as being probative of a diligent search for the defendant by the police. Contrawise, the defendant's mother and sister were particularly persuasive and certain that Officer Terrell was told that the defendant was in Missouri with his father. The police failed to actively search for the defendant at the Slipper Club where he and his mother had worked. Other than the one chance meeting between Terrell and the defendant's mother, the evidence of an active, specific, diligent search for defendant is lacking.

We recognized in *People v. Nichols* (1978), 60 Ill. App. 3d 919, 377 N.E.2d 919, that where the reason for the post-indictment delay of 33 months in arresting a defendant was faulty police procedure rather than the defendant's fugitive status, the defendant may be prejudiced. We conclude, in the case at bar, that the blame for the delay must squarely fall upon the State and not the defendant. In this respect the case is factually similar to *Nichols* where the length of the same type of delay was only 2 months longer. Even more similar was the post-indictment delay in *People v. Gulley* (1980), 83 Ill. App. 3d 1066, where we again expressed a concern for protecting an accused's right to speedy trial.

■■ The last of the four elements set forth in *Barker v. Wingo* (1972), 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182, for our consideration is the prejudice to the accused as a result of the post-indictment pre-arrest delay. Here the defendant has asserted his inability to recall the days of the alleged offenses and claims that the prejudice to him resulted from the long delay in arresting him. In essence he argues that the long delay has now impaired his ability to prepare a defense because no startling event occurred on the days in question to cause them to be independently recollected. The State contends that a defendant may not establish prejudice from a delay merely by claiming that the passage of time places a burden upon his ability to remember. (*People v. Love* (1968), 39 Ill. 2d 436, 235 N.E.2d 819.) However, the court in *Love* recognized that the

delay in a post-indictment pre-arrest case may be so prolonged and unjustified that prejudice to a defendant will be presumed. (*Nichols*; *People v. Jennings* (1973), 11 Ill. App. 3d 940, 298 N.E.2d 409.) By inference the Supreme Court in *Barker v. Wingo* has rejected the theory that an affirmative showing of prejudice from the delay is required in a post-indictment delay setting by emphasizing that none of the four facts were necessary or sufficient. *Barker v. Wingo*; *cf. People v. Lawson* (1977), 67 Ill. 2d 449, 367 N.E.2d 1244 (pre-indictment pre-arrest delay).

The 31-month post-indictment delay in arresting the defendant is comparable to the equally long delay in *Nichols* where we presumed that the delay prejudiced the defendant. (Contra, *People v. Harflinger* (1977), 49 Ill. App. 3d 31, 363 N.E.2d 875.) As the Supreme Court has stated: "The right to a speedy trial is not a theoretical or abstract right but one rooted in hard reality in the need to have charges promptly exposed. * * * . Stale claims have never been favored by the law, and far less so in criminal cases." (*Dickey v. Florida* (1970), 398 U.S. 30, 37, 26 L. Ed. 2d 26, 32, 90 S. Ct. 1564, 1568-69.) The post-indictment delay in arresting the defendant is unreasonably long and not justified by the reasons which caused it. We believe the delay here was so prolonged and unjustified that prejudice to the defendant should be presumed.

Accordingly, we conclude that the failure of the police to diligently follow up the search for the defendant with the resulting post-indictment delay in arresting him violated his sixth amendment right to a speedy trial. The dismissals of indictments A, B, C, and J were proper and are affirmed.

Affirmed.

SCOTT and STOUDER, JJ., concur.