Nos. 2--06--1022 & 2--06--1080 cons.        Filed:  10-2-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 03--CF--2860 |
| PAUL SILVER, | ) ) | Honorable James K. Booras, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE GROMETER delivered the opinion of the court:

Paul Silver appeals the denial of his motion to dismiss indictments charging him with possession of child pornography (720 ILCS 5/11--20.1(a)(6) (West 2002)).  He argues that he was denied his constitutional right to a speedy trial (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §8) when there was a delay of nearly three years between the indictments and his arrest, he was unaware of the indictments, and law enforcement knew of his location during that time but made no effort to arrest him.  We agree that under the circumstances of his case, Silver was denied his right to a speedy trial.  Accordingly, we reverse.

I. BACKGROUND

In May 2003, Silver's employment in Illinois was terminated after his employer found pornographic material on his work computer.  Shortly after, Silver moved to California.  On August 6, 2003, Silver was charged by grand jury indictment with six counts of possession of child

pornography. An arrest warrant was issued that same day, but it was not served until May 12, 2006, when Silver voluntarily surrendered himself to authorities.

On June 8, 2006, Silver moved to dismiss the charges on federal and state constitutional speedy-trial grounds. Silver alleged that he moved to California in May 2003, had his mail forwarded, surrendered his Illinois driver's license, and obtained a California driver's license. He purchased a home in California and held bank accounts there. He learned of the indictments in 2006 when he sought new employment and the existence of the arrest warrant was revealed in a criminal background check. He then returned to Illinois and surrendered himself to authorities. Silver alleged that the officers investigating the case knew that he had moved to California, yet they failed to attempt to locate him there. He also alleged that a Lake County prosecutor had advised the officers to enter the case information into a computer database, but not to seek extradition. Finally, Silver alleged that there had been mass layoffs at his previous place of employment, making witnesses difficult to find, and that one potential witness had moved to Australia.

In support of the motion, Silver provided a police report confirming that the investigating officers obtained his California address in August 2003. He also provided envelopes showing that his mail was forwarded and that some mail was returned to sender displaying his new address. Silver provided verification that he obtained a California driver's license in 2003. The State stipulated to the exhibits and did not deny the remaining allegations.

At the hearing on the matter, Silver argued that the lack of diligence in bringing him before the court was presumptively prejudicial and required that the charges be dismissed. The State did not offer evidence to dispute Silver's allegations about the availability of witnesses or otherwise seek to

show a lack of prejudice to Silver's defense. Instead, the State argued that prejudice could not be presumed and that Silver was required to demonstrate actual prejudice from the delay.

Referencing case law addressing preindictment delays, the trial court denied the motion, stating that the rule was that Silver must show prejudice. The court then stated: "And I don't have to move on to determine reasons for the delay and do a balancing act. Defendant has not shown substantial prejudice. That has not been shown."

Silver moved for reconsideration. At the hearing on the motion, the trial court stated that the delay at issue was not as long as in other cases. The court also indicated that Silver carried some blame for the delay because he perhaps had been anticipating the indictments after his former Illinois employer found pornographic material on his computer. The court also observed that Silver did not earlier assert his right to a speedy trial. On July 26, 2006, the court denied the motion to reconsider.

At a bench trial, Silver stipulated to facts showing that there was child pornography on his work computer, which was in his exclusive control. However, Silver's attorney specifically noted that while Silver was stipulating to what witnesses would say if they testified, he was not agreeing with their conclusions. Without explaining why or providing any specific defense or argument, Silver moved for a directed finding on the basis of insufficient evidence.[1] The trial court found Silver guilty, sentenced him to probation with psychiatric evaluation and treatment, and imposed fines. The court denied Silver's motion to reconsider, and he appeals.

_____

[1]Silver does not argue insufficiency of the evidence on appeal. In any event, we note that the stipulation was lengthy and established that witnesses would testify that the computer was used solely by Silver and that the images were pornographic and were of children. The stipulation also provided facts to show a full chain of custody.

## II. ANALYSIS

Silver contends that the trial court applied the wrong law to his motion to dismiss when it applied cases that involved preindictment delays. Those cases require a showing of actual prejudice before a speedy-trial violation can be found. See, e.g., People v. Lawson, 67 Ill. 2d 449, 458-59 (1977). Silver argues that in his case, where there was a lengthy delay after indictments were issued, prejudice is presumed and the State failed to present evidence to overcome that presumption.

"[T]he ultimate determination of whether a defendant's constitutional speedy-trial right has been violated is subject to de novo review." People v. Crane, 195 Ill. 2d 42, 52 (2001). However, we will uphold the trial court's factual determinations unless they are against the manifest weight of the evidence. Crane, 195 Ill. 2d at 51. Here, the facts are undisputed, and we thus review the matter de novo.

A delay in arresting a defendant after indictments have been issued is addressed under the Sixth Amendment right to a speedy trial. People v. Yaeger, 84 Ill. App. 3d 415, 418 (1980). The United States Supreme Court has identified four factors to be considered when determining whether a defendant's right to a speedy trial has been violated: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his or her right; and (4) the prejudice to the defendant as a result of the delay. Barker v. Wingo, 407 U.S. 514, 530, 33 L. Ed. 2d 101, 117, 92 S. Ct. 2182, 2192 (1972). The Illinois Supreme Court has adopted the same four factors. People v. Bazzell, 68 Ill. 2d 177, 182 (1977). Thus, Silver is correct that Barker provides the appropriate test. Cases involving preindictment delays apply a different test and are not applicable. See People v. Belcher, 186 Ill. App. 3d 202, 205 (1989).

We have clarified that "[t]he threshold question in a <u>Barker</u> analysis is whether the delay is presumptively prejudicial." <u>Belcher</u>, 186 Ill. App. 3d at 205-06. If the length of the delay is presumptively prejudicial, the court should go on to balance the remaining three factors. <u>Belcher</u>, 186 Ill. App. 3d at 206. Thus, the first factor has a triggering function, and unless a presumptively prejudicial period of delay occurs, a court need not conduct the remainder of the analysis. <u>People v. Makes</u>, 103 Ill. App. 3d 232, 236 (1981); see <u>Belcher</u>, 186 Ill. App. 3d at 206.

## A. The Length of the Delay

We agree with Silver that the delay in his case was presumptively prejudicial. We have held that a delay of nearly one year crosses the threshold dividing an ordinary delay from a presumptively prejudicial delay. <u>People v. Lock</u>, 266 Ill. App. 3d 185, 191 (1994); see also <u>Belcher</u>, 186 Ill. App. 3d at 207 (delay of 29 months is presumptively prejudicial). Here, of course, the delay was nearly three years.

## B. Reason for the Delay

The trial court found that "perhaps" Silver was responsible for the delay because he may have left the state in anticipation of being indicted. We determine, however, that this consideration was inappropriate under the case law because the State failed to provide any evidence that Silver was otherwise responsible for the delay.

The Third District has held that in the absence of indictments at the time of the move, and in the absence of a lifestyle indicative of a fugitive, it will not place an inculpatory motive upon a defendant for leaving the area. <u>Yaeger</u>, 84 Ill. App. 3d at 419. In <u>Yaeger</u>, the defendant moved to another state before indictments were issued and lived openly there by working, registering to vote, obtaining a driver's license, and receiving state benefits. In addition, there was a lack of evidence of

an active, specific, and diligent search by law enforcement for the defendant. In those circumstances, the court would not attribute the reason for the delay to the defendant, stating that "the blame for the delay must squarely fall upon the State and not the defendant." Yaeger, 84 Ill. App. 3d at 420. Accordingly, the State "has a 'constitutional duty to make a diligent, good-faith effort' to locate and apprehend a defendant and bring him to trial." Belcher, 186 Ill. App. 3d at 206, quoting Smith v. Hooey, 393 U.S. 374, 383, 21 L. Ed. 2d 607, 614, 89 S. Ct. 575, 579 (1969).

Here, the State did not present facts to show that Silver was in some way responsible for the delay, other than the fact that he moved to California before the indictments were issued--a fact that cannot be used to attribute blame to Silver. It is undisputed that Silver lived openly in California and that the police in Illinois were aware of his California address. It is also undisputed that when Silver learned of the indictments, he immediately surrendered to Illinois authorities. Accordingly, we determine that this factor weighs against the State.

### C. The Assertion of Right

The trial court relied in part on the fact that Silver did not assert his speedy-trial right during the time he was in California. But it is undisputed that Silver was unaware of the indictments and that he surrendered and asserted his right to a speedy trial immediately upon learning of them.

Had Silver been aware of the indictments, a failure to come forward and assert his rights would have weighed heavily against him. See Doggett v. United States, 505 U.S. 647, 653, 120 L. Ed. 2d 520, 529, 112 S. Ct. 2686, 2691 (1992). But a failure to make a speedy-trial demand will not be weighed against the defendant when he or she was unaware of the charges. See Doggett, 505 U.S. at 653, 120 L. Ed. 2d at 529, 112 S. Ct. at 2691; Belcher, 186 Ill. App. 3d at 204. Because Silver was unaware of the indictments, the trial court incorrectly weighed this factor against him.

### D. Prejudice as a Result of the Delay

The most difficult factor to apply is the consideration of the prejudice resulting from the delay. Silver does not explain precisely how his defense was prejudiced by the delay, although he alleged in his motion that witnesses were unavailable. The State argues that he was required to show some form of prejudice, especially when he stipulated to the facts at his bench trial and did not present a defense.

"Unreasonable delay between formal accusation and trial can cause several types of prejudice to the defendant, including oppressive pretrial incarceration, anxiety and concern of the accused, dimming memories, and loss of exculpatory evidence." Lock, 266 Ill. App. 3d at 191. The Supreme Court has observed that the most serious of these forms of prejudice is the last " 'because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.' " Doggett, 505 U.S. at 654, 120 L. Ed. 2d at 530, 112 S. Ct. at 2692, quoting Barker, 407 U.S. at 532, 33 L. Ed. 2d at 118, 92 S. Ct. at 2193.

We have stated that presumptive prejudice from the length of the delay cannot alone prove a sixth amendment speedy-trial claim. Lock, 266 Ill. App. 3d at 191. We have also recognized that negligence in bringing a defendant to trial, when unaccompanied by a particularized trial prejudice, must have lasted longer than the amount of time necessary to trigger the Barker analysis. See generally Lock, 266 Ill. App. 3d at 192. Thus, when the delay was less than a year, close to the minimum necessary to trigger judicial review, we have determined that relief is not available absent a particularized showing of prejudice. Lock, 266 Ill. App. 3d at 192. However, excessive delay can presumptively compromise a trial in ways that neither party can identify or prove. Doggett, 505 U.S. at 655, 120 L. Ed. 2d at 531, 112 S. Ct. at 2693; Lock, 266 Ill. App. 3d at 191. Thus, when an

unjustified delay is well beyond the Barker minimum, such that the first three factors weigh so heavily in a defendant's favor, a defendant need not show a specified prejudice to his or her defense. See Doggett, 505 U.S. at 656, 120 L. Ed. 2d at 531, 122 S. Ct. at 2693; Belcher, 186 Ill. App. 3d at 207.

For example, we have not required a defendant to affirmatively show prejudice after an unjustified 29-month delay. See Belcher,186 Ill. App. 3d at 208. When a delay of 31 months was determined to be unjustified, the Third District also presumed prejudice under the fourth part of the Barker test. Yaeger, 84 Ill. App. 3d at 421; see also People v. Nichols, 60 Ill. App. 3d 919, 924-25 (1978) (prejudice to defense presumed after delay of 33 months). Likewise, the First District has stated that a protracted delay can make it unnecessary for a defendant to show actual prejudice. People v. Singleton, 278 Ill. App. 3d 296, 301 (1996). There, when the delay was 50 months, the first two factors weighed heavily against the State, and the third prong was neutral, the court presumed prejudice as to the fourth prong. Singleton, 278 Ill. App. 3d at 298, 301.

Here, the first three factors weigh heavily against the State. Silver was not arrested for almost three years, and the State made no effort to arrest him earlier. The State admits that it knew of Silver's location yet did not seek to apprehend him, and it has not presented a justification for failing to do so. Silver was unaware of the indictments, and when he learned of them, he promptly turned himself in and asserted his speedy-trial right. Thus, under the circumstances, the State failed in its " 'duty to make a diligent, good-faith effort' to locate and apprehend" Silver and bring him to trial. See Belcher, 186 Ill. App. 3d at 206, quoting Smith, 393 U.S. at 383, 21 L. Ed. 2d at 614, 89 S. Ct. at 579.

Because the delay was so excessive and was unjustified by the State, we determine that Silver was not required to make an affirmative showing of prejudice to his defense. We note, however, that

Silver alleged prejudice in his motion to dismiss and that the State did not provide evidence to dispute the allegations. Further, Silver alleged the type of prejudice that the Supreme Court has recognized is of the greatest concern, yet is also the most difficult to prove. See Doggett, 505 U.S. at 654, 120 L. Ed. 2d at 529-30, 112 S. Ct. at 2692.

We acknowledge that Silver stipulated to facts showing his guilt. However, because of the excessive and unjustified delay, the trial court should have granted the motion to dismiss before trial without an affirmative showing of prejudice from Silver. Because an affirmative showing of prejudice was not required, the stipulated facts at trial have no bearing on the previous motion to dismiss.

### III. CONCLUSION

We determine that the delay in this case violated Silver's constitutional right to a speedy trial. The delay was excessive and was not justified by the State. Accordingly, Silver was not required to affirmatively show prejudice. Because the remaining Barker factors weigh heavily against the State, we conclude that the trial court erred when it denied Silver's motion to dismiss.

The judgment of the circuit court of Lake County is reversed.

Reversed.

BOWMAN and CALLUM, JJ., concur.