THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ED JENNINGS, Defendant-Appellant.

(No. 56711;

First District (3rd Division)—May 24, 1973.

Francis E. Andrew, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, (Elmer C. Kissane and Roberta K. Cole, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant was charged with Solicitation to Commit Mob Action, a misdemeanor. (Ill. Rev. Stat. 1967, ch. 38, par. 8—1.) After a bench trial, he was found guilty of that charge. He was sentenced to serve 30 days in jail and ordered to pay a fine of $300. On appeal defendant contends that the eight-month delay between the issuance of the arrest warrant and his arrest deprived him of due process and the right to a fair trial; that the complaint was insufficient as a matter of law; that he was not proved guilty beyond a reasonable doubt; and that there was a fatal variance between the proof and the pleadings.

The complaint charged that the offense in question occurred on August 27, 1968. The complaint was filed and the arrest warrant was issued on August 28, 1968. Defendant was arrested on May 12, 1969, 258 days later.

Prior to trial, defendant filed a written motion to dismiss the complaint on the ground that the delay in arresting him so prejudiced his ability to present a defense as to deny him the possibility of a fair trial. Defendant was the sole witness to testify at the hearing on this motion.

Defendant testified that during this entire period he was a full-time student at the University of Illinois Circle Campus, in the City of Chicago. The arrest warrant bore a notation that defendant was a student at the University. Defendant testified that between August 27, 1968, and May 12, 1969, he had no idea that he was wanted on the instant charge. During this period his permanent address was 1519 South

58th Avenue, Cicero, Illinois. He presently resided at 3006 West Fullerton, and had previously resided at 2028 North Halsted Street and 1719 North Richmond Street, all in the City of Chicago. However, he maintained the address in Cicero as his permanent mailing address throughout this time. His sister, her husband and children resided at the Cicero address. They received his mail and telephone calls, and he contacted them every two or three weeks. The address in Cicero was listed as his permanent address at the University. It was also the address appearing on his driver's license and draft card.

During this period defendant stated that he was twice cited for traffic violations, appeared in court and was acquitted of the traffic charges. He stated that during the time in question he had never attempted to hide from, or avoid contact with the police. Since August 27, 1968, defendant had never resided outside the county. He had gone out of town on several occasions, but never for more than a few days. Defendant graduated from the University on June 15, 1969.

Between August and May, defendant was an active member of a non-violent faction of Students for a Democratic Society, participating in lectures, discussions, demonstrations and other activities. At some of these activities defendant testified that he observed, and was observed by, members of the Chicago Police Intelligence Division. On one occasion, one of the officers spoke to him and indicated that he knew defendant and was aware of defendant's employment at one of the metropolitan newspapers.

In denying defendant's motion to dismiss the complaint, the trial judge stated that he believed the police could have located the defendant through his contact with the University of Illinois. However, absent evidence that a particular attempt to find defendant would have been fruitful, the judge felt compelled to deny the motion to dismiss. The trial court also denied a defense motion to compel the State to show diligence in arresting defendant.

Immediately prior to trial, defendant's request for a rehearing on his motion to dismiss the complaint was denied. At this time, defendant made an offer of proof that his sister would testify that he did maintain a permanent mailing address at her home and that the police had never come to her home seeking her brother. Defendant made a further offer of proof that Officers Ritenour, Olsen and Grubisie of the Chicago Police Department would testify that through their intelligence operations they knew that defendant was involved in the S.D.S. between August and May, and that defendant was a student at the University of Illinois during this time.

At trial, the State offered the testimony of two members of the Chi-

cago Police Intelligence Division, Officers James Tobin and Jerome Ritenour. The two officers testified that they were partners, and were working together during the Democratic National Convention. On the evening of August 27, 1968, between 11:30 and midnight, the officers were together at the intersection of Clark, LaSalle and Eugenie Streets just outside Lincoln Park. They observed a crowd of from 2,000 to 5,000 persons emerging from the park.

Officer Tobin testified that defendant was leading this crowd and encouraging them to attack the police. He further testified that, in response to defendant's urging, the crowd came out of the park throwing rocks and missiles.

Officer Ritenour testified that the crowd was driven out of the park by police officers who had formed a wedge behind the crowd. Officer Ritenour also stated that defendant was in the midst of the crowd, not leading it. The witness stated that he heard defendant shouting, but that he did not see defendant throw any object.

With regard to efforts to locate defendant after the issuance of the arrest warrant, Officer Tobin testified at trial that he checked a Halsted Street address obtained from the University of Illinois Circle Campus. The address proved to be a vacant lot, but he could not recall the exact number. The witness did not check the Cicero address. Officer Tobin further testified that, while he visited the University campus, he did not speak to defendant's teachers, nor did he visit any of his classes. The witness did not know that defendant had graduated. At this point, the trial court denied defendant's motion for a continuance to rebut the testimony of Officer Tobin regarding the information he received at the campus.

Defendant testified at trial that he had no particular memory of the evening in question. He testified that at the time of the 1968 Democratic National Convention he was a member of the S.D.S. and had participated in several demonstrations in and around Lincoln Park. However he had no independent recollection of where he was, what he was doing or whom he was with on August 27, 1968. Defendant also testified that he was no longer a member of S.D.S.

Defendant's initial contention is that the pre-arrest delay of 258 days caused the fading of his memory, prejudiced his ability to formulate a competent defense, and thus deprived him of the right to a fair trial.

■ The Illinois Supreme Court has recognized that delay between the filing of a complaint and the informing of a defendant of the charges against him through the arrest process could possibly so prejudice a defendant as to violate his right to a speedy trial. (See *People v. Love*, 39 Ill.2d 436, 235 N.E.2d 819.) The possible prejudice of such a delay

944

has also been recognized by the federal courts (*Godfrey v. United States*, 123 U.S. App. D.C. 219, 358 F.2d 850), as well as the courts of other states. *Rost v. Municipal Court of Southern Judicial Dist.*, 184 Cal. App. 507, 7 Cal.Rptr. 869.

■■■ Delay may be so prolonged and unjustified that prejudice will be presumed; however, in other instances the particular facts of the situation must dictate whether the State-occasioned delay has been unreasonable and prejudicial to the defendant. (*People v. Love, supra.*) In the instant case the delay was not so prolonged or unreasonable as to produce a presumption of prejudice. It is necessary, therefore, to examine the particular circumstances to determine whether this delay of 258 days was so prejudicial to defendant as to be violative of due process.

It is apparent that the pre-arrest delay was caused by the State. Defendant was accessible to arrest at any time during the eight month period. The police were aware that defendant was a student at the University of Illinois Circle Campus. There was also unrebutted evidence that the police were aware of defendant's place of employment and that one of the officers of the intelligence division spoke to defendant during this period. The issue remaining is how much prejudice accrued to defendant as a result of this delay.

■■ Courts have recognized that loss of memory occasioned by such delay can be so prejudicial to an accused as to constitute a violation of constitutional rights. (See *Godfrey v. United States*, supra; *Jackson v. United States*, 122 U.S. App. D.C. 124, 351 F.2d 821; *Ross v. United States*, 121 U.S. App. D.C. 233, 349 F.2d 210.) With regard to a demonstration of such prejudice, often all an accused will be able to show is "a plausible claim of inability to recall or reconstruct the events of the day of the offense." (*Ross v. United States, supra*, at p. 215.) "The issue of prejudice being what it is, it will only be a rare case in which the accused can show much more than this." *Jackson v. United States, supra*, at p. 823.

■■ In the instant case, the defendant testified to a loss of and fading of memory concerning the incidents which occurred on August 27, 1968. The instant offense charged was not the usual singular act, but rather was a course of conduct during a single heated incident occurring within a week of heated incidents. Eight months could do much to erase the memory of a few minutes during an extremely tumultuous week. Furthermore, an examination of the testimony of the prosecution witnesses reveals considerable damage to memory. There were substantial conflicts and discrepancies in the two officers' testimony. It is question-

able whether Officer Ritenour's account of the events would establish the offense charged against the defendant. In any case, the variances in the testimony of the two officers, simultaneously observing the same conduct of defendant, demonstrated that memory had suffered. It must also be noted that the officers, immediately after the occurrence, were aware that criminal proceedings would ensue. Presumably therefore, they would mark the date and events in their memory, while defendant was unaware of any subsequent proceedings, or of the importance of noting times and events, until over eight months had elapsed. We find that the pre-arrest delay of 258 days caused by the State was so prejudicial to defendant as to have deprived him of a fair trial.

In *People v. Love, supra,* our Supreme Court found that a 148 day delay between the filing of a complaint and defendant's arrest for the offense of leaving the scene of an accident was insufficient to show prejudice. The facts of that case are most clearly distinguishable from the present case. In that case the offense was more clearly defined, and, most importantly, there was no testimony offered by defendant that his memory had, in fact, been impaired. Additionally, the court in *Love* cited and explicitly distinguished *Godfrey v. United States, supra,* noting that there actual prejudice had been shown. The delay and resulting prejudice in *Godfrey* is indistinguishable from that in the present case.

In view of our holding as to defendant's initial contention, it is unnecessary to consider his additional arguments.

For the reasons stated, the judgment of the circuit court of Cook County is reversed.

Judgment reversed.

DEMPSEY, P. J., and McGLOON, J., concur.