STATE OF NORTH CAROLINA v. HERMAN NATHANIEL McCOY

No. 88

(Filed 5 May 1981)

1. **Constitutional Law § 51— pre-accusation delay—due process**
    A pre-accusation delay violates due process only if the defendant can show that the delay actually prejudiced the conduct of his defense and that it was unreasonable, unjustified, and engaged in by the prosecution deliberately and unnecessarily in order to gain tactical advantage over the defendant.

2. **Constitutional Law § 51— due process—speedy trial—delay between warrant and trial**
    Neither defendant's right to due process nor his Sixth Amendment right to a speedy trial was violated by an eleven month delay between the issuance of the arrest warrant and his trial for second degree murder where the delay was not for the purpose of permitting the prosecution to gain unfair advantage over defendant; defendant was hospitalized from gunshot wounds for approximately four months after the warrant was issued and was physically unable to be tried during such time; all but approximately six weeks of the remaining delay was caused by defendant's own motions for continuance and for medical examinations to determine his competency to stand trial; and defendant showed no prejudice to his ability to defend himself because certain witnesses had moved away and the crime scene had been rearranged before his arrest since the witnesses referred to all testified for the State and were subject to defendant's cross-examination and the crime scene was photographically preserved.

1

3. **Criminal Law § 91— statutory speedy trial—exclusion of delay from continuance granted to defendant**

In computing the 120-day statutory speedy trial period, the trial court properly excluded a delay of 27 days resulting from a continuance granted to defendant pursuant to G.S. 15A-701(b).

4. **Criminal Law § 91— time excludable for mental examination**

In G.S. 15A-1002(b)(2) the legislature intended to declare that 60 days or less is a reasonable time to conduct an examination to determine defendant's capacity to stand trial, and the State was entitled to exclude at least 60 of the 67 days defendant was held in a mental health facility to determine his capacity to stand trial plus the number of days between the examination and the date the report became available to defendant and the State.

5. **Criminal Law § 29— finding of competency to stand trial**

Although defendant had suffered gunshot wounds and was apparently experiencing headaches as a result of his injuries, the trial court did not err in finding him competent to stand trial on the basis of an uncontradicted report of the forensic psychiatrist who examined defendant.

6. **Criminal Law § 161.2— broadside assignment of error**

An assignment of error which purported to raise a number of different legal issues was broadside and ineffective.

7. **Criminal Law § 75.15— incriminating statement in hospital emergency room— admissibility**

The trial court did not err in the admission of incriminating statements made by defendant to an SBI Agent in a hospital emergency room after defendant received treatment for gunshot wounds on the ground that defendant "must have been" under the influence of pain-killing drugs so that he could have not knowingly and understandingly made the statements where the trial court conducted a *voir dire* hearing concerning defendant's mental and physical condition at the time he made the statements, and the court made extensive findings of fact in accordance with the State's evidence that defendant's attending physician gave permission for defendant to be interviewed and that defendant was alert, responsive and coherent at the time he made the statements.

8. **Bills of Discovery § 6— summary of defendant's statement furnished counsel—failure to furnish second summary of statement**

In a murder prosecution in which the district attorney, pursuant to defendant's discovery request, furnished defense counsel with a summary of an oral statement made by defendant, the trial court did not err in refusing to strike an SBI agent's testimony on the ground that defendant had not been provided a copy of a second summary of defendant's statement prepared by the agent for his own use at the trial where neither summary appeared in the record on appeal and there was thus no showing that one summary materially differed from the other.

**9. Bills of Discovery § 6— violation of discovery statute—offer of recess—evidence not excluded**

Even if it is assumed that the State failed to comply with the discovery statute, G.S. 15A-903(e), in failing to notify defense counsel of tests performed upon the deceased's bedcovers and a bullet removed from her body until three days before trial, the trial court properly acted within its discretion in refusing to suppress evidence of the tests and in ordering a recess to permit defendant to examine the evidence and question the State's witnesses and offering to continue the recess to allow defendant to locate a ballistics expert, especially since the district attorney notified defendant of the tests as soon as he became aware of them.

**10. Homicide § 21.7— second degree murder—sufficiency of evidence**

The evidence was sufficient to be submitted to the jury on the question of defendant's guilt of second degree murder where the jury could reasonably find from the evidence that defendant fatally shot deceased, who was in bed under the bedcovers, with a deadly weapon at close range in the head, watched deceased call for help but did nothing to assist her, thereafter cut the telephone wires and conversed with other occupants of the dwelling without mentioning the shooting, and then fled the dwelling, and where defendant's testimony tending to show that he shot the victim either accidentally or in self-defense did more than merely explain or clarify the evidence favorable to the State but was inconsistent with much of that evidence and the inferences which could reasonably be drawn therefrom.

**11. Criminal Law §§ 96, 128.2— withdrawal of evidence from jury—error cured**

The trial court in a homicide case did not err in the denial of defendant's motion for a mistrial when an officer testified that he "went to Central Prison and picked up the defendant" where the trial court allowed defendant's motion to strike such testimony and instructed the jury not to consider it, and where defendant refused the trial court's offer to explain to the jury that defendant was in Central Prison solely for psychiatric evaluation.

**12. Criminal Law § 169.6— exclusion of testimony—absence of answers in record**

An exception to the exclusion of testimony by defendant could not be sustained where the record failed to show what defendant would have testified had he been permitted to answer questions to which objections were sustained. Furthermore, defendant was not prejudiced by the exclusion of such testimony where he got before the jury other testimony which fully supported each contention which he says testimony he was not permitted to give would also have supported.

**13. Homicide § 24.1— instruction on presumptions of unlawfulness and malice—use of "or it is admitted"—harmless error**

When instructing the jury on the presumptions of unlawfulness and malice arising from proof of a killing by the intentional use of a deadly weapon, the trial court should not use the clause "or it is admitted" in a case where defendant does not in open court admit an intentional shooting. However, such an instruction was not prejudicial to defendant in this case since the jury must have understood it to be simply a statement of an abstract

State v. McCoy

legal principle and not the trial judge's expression of an opinion regarding defendant's testimony.

Justice CARLTON concurring.

Chief Justice BRANCH, Justices HUSKINS and MEYER join in this concurring opinion.

DEFENDANT appeals from *Judge Herbert Small* presiding at the 7 January 1980 Criminal Session of WILSON Superior Court. Upon a plea of not guilty to an indictment duly returned defendant was tried and convicted of second degree murder of Dorothy Smith and sentenced to life imprisonment. His appeal is pursuant to G.S. 7A-27(a). This case was docketed and argued as No. 47, Fall Term 1980.

*Rufus L. Edmisten, Attorney General, by Myron C. Banks, Special Deputy Attorney General, for the State.*

*Robert A. Farris, Jr., Attorney for defendant appellant.*

EXUM, Justice.

Defendant assigns as error the denial of his statutory and constitutional rights to a speedy trial, the determination that he was competent to stand trial, numerous evidentiary rulings, the denial of his motions for nonsuit and mistrial, and portions of the trial court's instructions to the jury. We have carefully examined each assignment of error and conclude that defendant's trial was free from prejudicial error.

The state's evidence tends to show the following: Defendant resided in Wilson County with the deceased, Dorothy Smith, with whom he shared a bed, and with witnesses Grace Williams, Nellie Smith and Judy Batts. Defendant, Dorothy Smith, and other household members consumed alcoholic beverages during the day and night of 11 February 1979 and all retired about midnight. Grace Williams, Nellie Smith and Judy Batts were each awakened during the early morning hours by defendant who asked to be taken to the hospital because he had a headache. They all refused. Shortly thereafter they heard the front door open and close and a car leave. Upon entering defendant's bedroom five minutes later they found Dorothy Smith's bloodstained body. The telephone wires in both the bedroom and kitchen had been torn from the

wall. Grace Williams and Nellie Smith used a neighbor's telephone to notify the police. Lieutenant Wayne Gay responded to the call. He arrived at the residence at approximately 4:00 a.m. on 12 February, viewed the body, removed exhibits and interviewed the inhabitants. Not long thereafter Deputy Sheriff Richard Winstead apprehended defendant in Gold Rock, North Carolina, and removed a .22 caliber pistol from him. SBI Agent Terry Newell talked with defendant in Nash General Hospital at approximately 9:00 a.m. After being advised of and waiving certain of his constitutional rights, defendant stated that he had shot Dorothy Smith. Dr. Robert Hadley examined Dorothy Smith's body and found a gunshot wound and a superficial stab wound. In his opinion the cause of death was a bullet wound to the brain and a subsequent hemorrhage. SBI Agent Richard Szymkiewicz, a gunshot residue expert, testified that in his opinion the bullet was fired from a distance of twelve inches. The state also offered the stipulated testimony of SBI Ballistics Agent Robert Cerwin to the effect that the bullet removed from Dorothy Smith's body was a .22 caliber lead bullet.

Defendant's evidence, presented through his own testimony, tended to show that he shot Dorothy Smith either accidentally or in self-defense. He testified that while both were in bed Smith, who weighed some fifty pounds more than he did, without provocation struck him in the face, kicked him between the legs, and attempted to stab him with a knife. In response he grabbed his pistol and struck her hand to push her back, whereupon the gun discharged and a bullet struck her face. Defendant fled the residence in fear that other members of the household would try to harm him upon discovery of Smith's death.

I

Defendant by his first assignment of error contends his motions to dismiss for undue delay in his trial were improperly denied. Defendant maintains the delay between issuance of the warrant (12 February 1979) and trial (7 January 1980) violated his constitutional right to a speedy trial. He further contends that the delay between indictment (25 June 1979) and trial violated our statutory speedy trial requirements. G.S. 15A-701. We find no merit in either contention.

Defendant's motions to dismiss on constitutional and statutory speedy trial grounds came on for hearing before Judge Small on 7 January 1980 just before trial was scheduled to begin. Judge Small offered the state and defendant opportunity to present evidence. Both declined to offer evidence and relied solely on "the file."

"The file," insofar as it is reproduced in the record on appeal, reveals the following facts material to these motions: Defendant, after leaving the scene of the shooting in Wilson County, robbed a service station in Gold Rock, Nash County. During the course of this robbery he shot and wounded a law officer and was in turn shot five times. He was taken to Nash General Hospital in Rocky Mount where he was placed under arrest for armed robbery but not for murder. A murder warrant for defendant's arrest arising from the shooting of Dorothy Smith was issued on 12 February 1979. Defendant remained hospitalized for treatment of his wounds from 12 February 1979 until 1 June 1979 when the murder warrant was served on him.

Defendant was indicted for Smith's murder on 25 June and arraigned on 2 July at which time he entered a plea of not guilty. The case was set for trial on 24 July. On 6 July defendant moved to continue the case beyond the calendared trial date in order to interview Lt. Gay who was then on vacation. Judge David Reid, Jr., granted the motion, and continued the case until the 20 August 1979 Session of Wilson Superior Court. On 20 July defendant moved to dismiss the charges on the ground the delay between the issuance and service of the warrant had already violated his constitutional right to a speedy trial.

On 23 August Judge Elbert S. Peel entered an *ex parte* order continuing the case to 1 October because "all available court time was utilized in the disposition of other serious cases." On 11 October defendant moved for a psychiatric and medical examination to determine his competency to stand trial. Judge Reid granted the motion on 11 October and ordered the trial calendared for 29 October. On 7 November Judge Peel continued the matter because defendant was still in Dorothea Dix Hospital pursuant to his earlier request for a pre-trial evaluation of his competency to stand trial. Judge Peel again continued the case on 20 December for the same reason. On 3 January 1980 a copy of Dorothea Dix's

forensic unit's report on defendant's competency to stand trial was made available to the state and defendant.

On 7 January Judge Herbert Small on the basis of "the file" before him concluded that defendant had been denied neither his constitutional nor statutory right to a speedy trial and denied defendant's motion to dismiss. We agree with this ruling.

A

We take up first defendant's claim that his constitutional right to a speedy trial has been denied. "The right of every person formally accused of crime to a speedy and impartial trial is secured by the fundamental law of this State, *State v. Hollars*, 266 N.C. 45, 145 S.E. 2d 309 (1965), and guaranteed by the Sixth Amendment to the federal constitution, made applicable to the State by the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 18 L.Ed. 2d 1, 87 S.Ct. 988 (1967). Prisoners confined for unrelated crimes are entitled to the benefits of this constitutional guaranty. *State v. Johnson*, 275 N.C. 264, 167 S.E. 2d 274 (1969)." *State v. McKoy*, 294 N.C. 134, 140, 240 S.E. 2d 383, 387-88 (1977). The Sixth Amendment provides, in part: "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial. . . ." In *United States v. Marion*, 404 U.S. 307 (1971), the Supreme Court made it clear that the Sixth Amendment's speedy trial clause "is activated only when a criminal prosecution has begun and extends only to those persons who have been 'accused' in the course of that prosecution." *Id.* at 313. *Marion* held, also, that a putative defendant is protected against delayed accusations, *i.e.*, accusations occuring some time after the crime was allegedly committed, not by constitutional speedy trial guarantees but by the dictates of constitutional due process. *United States v. Lovasco*, 431 U.S. 783 (1977); *United States v. Duke*, 527 F. 2d 386 (5th Cir. 1976); *State v. Dietz*, 289 N.C. 488, 223 S.E. 2d 357 (1976).

[1] The Due Process Clause is concerned essentially with the fundamental fairness of the proceedings. *United States v. Lovasco, supra*, 431 U.S. 783. The clause "has a limited role to play in protecting against oppressive delay." *Id.* at 789. Essentially a pre-accusation delay violates due process only if the defendant can show that the delay actually prejudiced the conduct of his defense and that it was unreasonable, unjustified, and engaged in by the prosecution deliberately and unnecessarily in order to gain

tactical advantage over the defendant. *See United States v. Marion, supra*, 404 U.S. 307; *United States v. Lovasco, supra*, 431 U.S. 783. *Lovasco* makes clear that the *sine qua non* of a due process violation is actual prejudice to the defense of the case. *Lovasco* probably establishes that defendant must also demonstrate an unjustified and unreasonable delay undertaken by the prosecution to gain some tactical advantage. *But see State v. Dietz, supra*, 289 N.C. 488, 223 S.E. 2d 357, in which, prior to *Lovasco*, this Court noted that in considering an alleged due process violation most courts weighed "the reasonableness of the delay against the prejudice to the accused." *Id.* at 491, 223 S.E. 2d at 359. Because the constitutional speedy trial mandate is designed to protect interests in addition to ensuring a fair trial for defendant, its violation may occur even in the absence of actual prejudice to the defense of the case. *State v. McKoy, supra*, 294 N.C. 134, 240 S.E. 2d 383. *See also Barker v. Wingo*, 407 U.S. 514 (1972), especially Justice White concurring.

Here the arrest warrant was issued on 12 February 1979 but defendant was not arrested pursuant to it until 1 June 1979. A question arises as to whether the delay between issuance and execution of the arrest warrant is governed by Sixth Amendment speedy trial standards, as defendant argues, or by due process standards. The Court said in *United States v. Marion, supra*, 404 U.S. at 320-21:

> "[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment.
>
> "Invocation of the speedy trial provision thus need not await indictment, information, or other formal charge. But we decline to extend the reach of the amendment to the period prior to arrest. Until this event occurs, a citizen suffers no restraints on his liberty and is not the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer."

This language standing alone and without reference to the facts and other portions of the opinion in *Marion*, suggests that the Sixth Amendment speedy trial mandate does not reach the period

prior to arrest or indictment but after the mere issuance of an arrest warrant.[1]

In *Marion* the Supreme Court considered whether a delay of approximately three years between the crime and a pre-arrest indictment *which was the first formal accusation against defendant* was violative of the Sixth Amendment. The Court held that it was not since "the Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused,' an event that occurred in this case only when the appellees were indicted . . . ." *Id.* at 313. The Court said:

> "[T]he protection of the [Sixth] Amendment is activated only when a criminal prosecution has begun and extends only to those persons who have been 'accused' in the course of that prosecution . . . . The Amendment would appear to guarantee to a criminal defendant that the Government will move with the dispatch that is appropriate to assure him an early and proper disposition of the charges against him." *Id.*

Pre-*Marion* cases rather consistently held that any delay after issuance but before service of an arrest warrant was subject to scrutiny pursuant to the Sixth Amendment's speedy trial provision. *Dickey v. Florida*, 398 U.S. 30 (1970); *State v. Neas*, 278 N.C. 506, 180 S.E. 2d 12 (1971); *State v. Johnson, supra*, 275 N.C. 264, 167 S.E. 2d 274; *Jones v. Superior Court*, 3 Cal. 3d 734, 91 Cal. Rptr. 578, 478 P. 2d 10 (1971); *see generally* Annot., "Delay Between Filing of Complaint or Other Charge and Arrest of Accused as Violation of Right to Speedy Trial," 85 A.L.R. 2d 980 (1962), in which a number of the earlier cases are collected.

*Marion* was interpreted in *Dillingham v. United States*, 423 U.S. 64 (1975), as dealing with "the question whether in assessing a denial of speedy trial claim, there was to be counted a delay between the end of the criminal scheme charged and the indictment of a suspect not arrested or *otherwise charged* previous to the indictment." *Id.* (Emphasis supplied.) In light of *Dillingham*,

---

1. Several courts have so held, *see, e.g., Arnold v. McCarthy*, 566 F. 2d 1377 (9th Cir. 1978); *People v. Hannon*, 19 Cal. 3d 588, 138 Cal. Rptr. 885, 564 P. 2d 1203 (1977); *State v. Baker*, 164 Conn. 295, 320 A. 2d 801 (1973); *Preston v. State*, 338 A. 2d 562 (Del. 1975); *Henson v. United States*, 287 A. 2d 106 (D.C. App. 1972); *see also Coca v. District Court*, 187 Colo. 280, 530 P. 2d 958 (1975); *State v. Allen*, 269 S.C. 233, 237 S.E. 2d 64 (1977).

the Fifth Circuit has noted that "the Sixth Amendment is activated whenever the defendant becomes an accused, either through arrest *or otherwise*, whether or not an indictment has also been returned." *United States v. Duke, supra*, 527 F. 2d 386, 388 n. 1 (5th Cir. 1976). (Emphasis supplied.) In *Duke* the Court also noted that after *Marion* and *Dillingham* the speedy trial cases were divided into two groups, those involving "pre-accusation" delay to which the due process standards enunciated in *Marion* applied and those involving "post-accusation" delay to which Sixth Amendment speedy trial standards applied. *Id.* The District of Columbia Circuit has said, "[i]t thus appears established that the Sixth Amendment right to a speedy trial attaches at the time of arrest or of formal charges, whichever comes first." *United States v. Jones*, 524 F. 2d 834, 839, n. 7 (D.C. Cir. 1975). The New York Court of Appeals relied on *Marion* for the proposition that a "defendant's right to a speedy trial . . . is violated if there is an excessive delay between institution of the prosecution — whether by felony information or complaint, detainer warrant or indictment — and the trial." *People v. White, supra*, n. 3, 32 N.Y. 2d at 397, 345 N.Y.S. 2d at 516-17, 298 N.E. 2d at 662. Other state courts have also interpreted *Marion* to mean that the constitutional speedy trial clock begins to run when any formal complaint is issued against defendant notwithstanding that no indictment has been issued nor an arrest made.[2]

The question, therefore, whether constitutional speedy trial standards or due process standards apply to any period of delay between the issuance of an arrest warrant and defendant's actual arrest when both these events precede indictment is not easily answered. Fortunately it is unnecessary for us here to determine it because defendant cannot, as we shall demonstrate, prevail under either standard.

[2] First, as we shall show below, defendant has suffered no prejudice to his defense as a result of this period of delay, nor was the delay for the purpose of permitting the state to gain some unfair advantage over defendant. Therefore the delay did not violate defendant's right to be accorded due process.

---

2. *State v. Lindsay*, 96 Idaho 474, 531 P. 2d 236 (1975); *Daniels v. State*, 30 Md. App. 432, 352 A. 2d 859 (1976); *People v. White*, 32 N.Y. 2d 393, 345 N.Y.S. 2d 513, 298 N.E. 2d 659 (1973); *see also People v. Jennings*, 11 Ill. App. 3d 940, 298 N.E. 2d 409 (1973); *State v. Brouillette*, 286 N.W. 2d 702 (Minn. 1979).

Whether the Sixth Amendment's speedy trial mandate has been violated must be determined in accordance with the guidelines first and ably set out in *Barker v. Wingo, supra*, 407 U.S. 514. We cannot improve on the exegesis of this case by Justice Huskins in *State v. McKoy, supra*, 294 N.C. 134, 140-41, 240 S.E. 2d 383, 388:

"The right to a speedy trial is different from other constitutional rights in that, among other things, deprivation of a speedy trial does not *per se* prejudice the ability of the accused to defend himself; it is impossible to determine precisely when the right has been denied; it cannot be said precisely how long a delay is too long; there is no fixed point when the accused is put to a choice of either exercising or waiving his right to a speedy trial; and dismissal of the charges is the only possible remedy for denial of the right to a speedy trial. *Barker v. Wingo*, 407 U.S. 514, 33 L.Ed. 2d 101, 92 S.Ct. 2182 (1972).

"So unless a fixed time limit is prescribed by statute, a claim that a speedy trial has been denied must be subjected to a balancing test in which the court weighs the conduct of both the prosecution and the defendant. The main factors which the court must weigh in determining whether an accused has been deprived of a speedy trial are (1) the length of the delay, (2) the cause of the delay, (3) waiver by the defendant, and (4) prejudice to the defendant. *Barker v. Wingo, supra; State v. Wright*, 290 N.C. 45, 224 S.E. 2d 624 (1976); *State v. Brown*, 282 N.C. 117, 191 S.E. 2d 659 (1972); *State v. Johnson, supra*. No single factor is regarded as either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial. 'Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.' *Barker v. Wingo, supra. See* Note, The Right to a Speedy Trial, 20 Stan. L. Rev. 476, 478, n. 15 (1968), for a slightly different approach.

"Thus the circumstances of each particular case must determine whether a speedy trial has been afforded or denied, and the burden is on an accused who asserts denial of a speedy trial to show that the delay was due to the neglect or wilfulness of the prosecution. *State v. Johnson, supra.* An accused who has caused or acquiesced in the delay will not be allowed to use it as a vehicle in which to escape justice. *Barker v. Wingo, supra; State v. Wright, supra; State v. Hollars,* 266 N.C. 45, 145 S.E. 2d 309 (1965); *State v. Lowry,* 263 N.C. 536, 139 S.E. 2d 870, *appeal dismissed* 382 U.S. 22, 15 L.Ed. 2d 16, 86 S.Ct. 227 (1965)."

Applying these principles to the case at hand without, however, deciding that they necessarily apply to any delay prior to defendant's arrest, we note first that the delay between issuance of the arrest warrant and trial was approximately eleven months. We doubt that for a murder case such as this one this delay, in the language of *Barker v. Wingo, supra,* 407 U.S. at 530, is enough to be "presumptively prejudicial," so as to require us to inquire "into the other factors that go into the balance." Our analysis might well stop here; in order, however, to demonstrate clearly that no constitutional speedy trial violation has occurred we consider the other factors.

With regard to the reason for the delay, there is nothing in the record to suggest that it was arbitrary or deliberate or designed by the prosecution to hamper the defense or take undue advantage of defendant. Defendant was hospitalized for approximately four months after the warrant was issued and could not, during this period, have been tried. After the warrant was served and defendant was· indicted, the case was delayed primarily because of defendant's 6 July motion for a continuance and his 11 October motion for medical examinations to determine his competency to stand trial. It is true that the case was continued on 23 August to 1 October 1979 by Judge Peel's *ex parte* order because "all available court time was utilized in the disposition of other serious cases." While lengthy, unreasonable delays "in run-of-the-mill criminal cases cannot be justified by simply asserting that the public resources provided by the State's criminal justice system are limited and that each case must await its turn," *Barker v. Wingo, supra,* 407 U.S. at 538 (Justice White concur-

ring), we think a delay of slightly more than one month for this reason does not violate the constitutional speedy trial mandate.

Since defendant was apparently physically unable to be tried until June 1979 and since all but approximately six weeks of the remaining delay was caused by defendant's own motions, we must conclude that defendant contributed to or acquiesced in a substantial portion of the eleven-month period between issuance of the warrant and trial.

Finally defendant has shown no prejudice to his ability to defend himself. He claims prejudice in his brief because "by the time defendant was afforded counsel, the witnesses who had previously lived in the home had moved . . . to places unknown to defendant or his counsel" and because the crime scene "had long since been rearranged" before his actual arrest. The witnesses referred to, however, all testified for the state and were subject to defendant's cross-examination. The crime scene, moreover, was photographically preserved, and the photographs were admitted into evidence without objection.

We conclude, therefore, that neither defendant's constitutional right to a speedy trial nor his right to due process was violated by the eleven-month delay or any portion thereof between issuance of the arrest warrant and trial.[3]

B

We turn now to defendant's statutory speedy trial claim. Pursuant to G.S. 15A-701(al)(1) the 120-day period within which defendant was required to be tried commenced running on 25 June

---

3. We note, however, that it is important in this state that an arrest warrant be served promptly after its issuance not only because service constitutes formal notice to defendant of the pending charges, but also because a number of statutory rights accrue not upon the issuance of the warrant but upon the accused's arrest pursuant thereto. *See, e.g.*, G.S. 15A-501, 511, and 601. Although we conclude that because of the circumstances of this case defendant has not been prejudiced by the delay in his arrest, we hasten to say that we disapprove the state's failure to serve the arrest warrant until some four months after it was issued. Defendant's hospitalization during this period provided no excuse or justification for not serving the warrant. It should have been served promptly upon its issuance.

1979, the date of his indictment.[4] Defendant was not tried until 7 January 1980, 196 days later. Judge Small, in concluding that defendant was brought to trial within 120 days of indictment, excluded the periods from 6 July to 20 August 1979, 23 August to 1 October 1979, and 11 October 1979 to 3 January 1980. Defendant challenges each of these exclusions. We find that a portion of the periods from 6 July to 20 August 1979 and from 11 October 1979 to 3 January 1980 were properly excluded. These proper exclusions are sufficient to bring defendant's trial well within the 120-day requirement of G.S. 15A-701(al). We do not consider the exclusion of the period from 23 August to 1 October 1979.

[3]  The first exclusion, 6 July to 20 August (45 days), was grounded on defendant's motion to continue the case filed 6 July. General Statute 15A-701(b) provides in part:

> "(b) The following periods shall be excluded in computing the time within which the trial of a criminal offense must begin:
>
>    . . . .
>
> (7) *Any period of delay* resulting from a continuance granted . . . if the judge granting the continuance finds that the ends of justice served by granting the continuance outweigh the best interests of the public and the defendant in a speedy trial and sets forth in writing in the record of the case the reasons for so finding." (Emphasis supplied.)

On 6 July Judge Reid granted defendant's motion for continuance after making the findings and giving reasons as required by G.S. 15A-701(b)(7). On 6 July, however, the trial was then scheduled for 24 July. Defendant moved that the court "continue the trial of his

---

4. G.S. 15A-701 (al) (1980 Interim Supplement) provides, in pertinent part:

"[T]he *trial of a defendant charged with a criminal offense who is arrested, served with criminal process, waives an indictment or is indicted,* on or after October 1, 1978, and before October 1, 1981, shall begin within the time limits specified below:

   (1) Within 120 days from the date the defendant is arrested, served with criminal process, waives an indictment, or *is indicted, whichever occurs last.*" (Emphasis supplied.)

case from July 24, 1979 to a later term." Judge Reid ordered that the case "be continued from July 24 to August 20, 1979. The "period of delay," therefore, as a result of this continuance, was not from 6 July to 20 August (45 days) as found by Judge Small; it was from 24 July to 20 August (27 days). Thus Judge Small erred only insofar as he excluded more than 27 days on the basis of Judge Reid's granting defendant's 6 July motion for continuance.

[4]    Defendant, on 11 October 1979, moved for an examination to determine his competency to stand trial. Judge Reid granted the motion and calendared the trial for 29 October. Defendant was transferred to Dorothea Dix Hospital. On 7 November and again on 20 December Judge Peel by *ex parte* orders continued the case because defendant remained hospitalized at Dorothea Dix. Defendant was thereafter returned to Wilson County, and defendant's counsel received a copy of Dorothea Dix's forensic unit's report on 3 January 1980. Judge Small excluded the period of time between 11 October and 3 January. Defendant contends that only the period between 11 October, the date of his motion, and 29 October, the date on which trial was calendared after his motion was allowed, should be excluded.

We disagree. North Carolina General statute 15A-701(b) provides in part:

"(b) The following periods shall be excluded in computing the time within which the trial of a criminal offense must begin:

  (1) Any period of delay resulting from other proceedings concerning the defendant including, but not limited to, delays resulting from

     a. A mental or physical examination of the defendant, or a hearing on his mental or physical incapacity."

The delay properly excludable due to defendant's mental examination "runs from the date of entry of the order of commitment to the date the report becomes available to both defendant and the State." *State v. Harren*, 302 N.C. 142, 146, 273 S.E. 2d 694, 697 (1981). In calculating the excludable days under G.S. 15A-701(b)(1)(a) the first day is excluded and the last day is included. *Id.* Under *Harren*, therefore, nothing else appearing, Judge Small properly excluded 84 days (11 October 1979 to 3 January 1980) attributable to defendant's mental examination.

Defendant argues further that since he was in custody and subject to the state's control the examination should have been completed before the 29 October 1979 trial date. The examination took place on 17 December and the report was prepared on 18 December. Defendant notes that only a short time was needed to conduct the examination and prepare a report. He argues that the state took an unreasonably long time to conduct his examination; therefore it is not entitled to exclude the entire period consumed by this process.

We agree that the state may not consume an unreasonable amount of time in conducting mental and physical examinations and filing reports thereon. General Statute 15A-1002(b)(2) provides that "[i]n *no event* may the period [during which defendant is held in a state mental health facility to determine defendant's capacity to proceed] exceed 60 days." (Emphasis supplied.) *See* n. 5, *infra.* We believe the legislature intended to declare that sixty days or less is a reasonable time to conduct this kind of mental examination. It has said that "in no event" may more time be consumed. In *Harren,* furthermore, the time between the commitment order and the report's availability was only 37 days.

In this case we must assume, nothing else appearing, that defendant was transferred to Dorothea Dix Hospital on 11 October when the commitment was issued. *See State v. Harren, supra.* Defendant was examined at Dorothea Dix on 17 December, *67* days after he was committed. Presumably he was then released and returned to the Wilson County jail. Thus defendant was held in Dorothea Dix a mere seven days longer than the statute permits. While we do not approve this practice, it does not in this case result in a violation of our Speedy Trial Act. Even if we deducted this seven-day period from the 84-day period excluded by Judge Small so as to exclude only 77 days from the 120-day statutory period, defendant was still tried well within the 120-day period. (27 days for defendant's motion for continuance and 77 days for the mental examination equals 104 days. 196 days between indictment and trial, less 104 excludable days, equals 92 days.) We do not, therefore, decide that any amount of time a defendant is held in a state mental facility to determine his capacity to proceed which exceeds 60 days may not be excludable from the 120-day statutory speedy trial period. There are, of course, other remedies for a defendant who is held in a mental

health facility beyond the permitted statutory period. The state should be assiduous in observing this 60-day period, but because it is unnecessary to decide on these facts whether the state should be penalized for not observing it in terms of the requirements of our Speedy Trial Act, we decline to do so.

## II

[5] Defendant by this second assignment of error contends the trial court erred in finding him competent to stand trial. A forensic psychiatrist at Dorothea Dix Hospital, after examining defendant, concluded that he did not suffer from "serious mental illness" and that he was "competent to proceed since he understands the charges pending against him and is able to assist his lawyer." After defendant's return to Wilson County, Judge Small, acting pursuant to G.S. 15A-1002, held a hearing on 7 January 1980 to determine defendant's capacity to proceed.[5] The state relied on the report of the forensic psychiatrist who examined defendant. Defendant offered no evidence. Conceding that he was not in such physical discomfort as to preclude assisting in his case, defendant, through counsel, nevertheless urged that he be given neurological tests since "there may well be a physical cause for his lapse of memory, headaches, and [things of] that nature." Judge Small, after reciting the findings in the psychiatrist's report and noting that defendant had previously been physically incapacitated to stand trial and still experienced headaches, found nothing in the evidence which would "justify the Court in finding that the Defendant, by reason of mental illness or defect, is unable to understand the nature and objects of the proceedings against him, or is

5. G.S. 15A-1002 provides, in pertinent part:

"(b) When the capacity of the defendant to proceed is questioned, the court:

. . . .

   (2) May commit the defendant to a State mental health facility for observation and treatment for the period necessary to determine the defendant's capacity to proceed. In no event may the period exceed sixty days. . . .

   (3) Must hold a hearing to determine the defendant's capacity to proceed. If examination is ordered pursuant to subdivision (1) or (2), the hearing must be held after the examination. Reasonable notice must be given to the defendant and to the prosecutor and the State and the defendant may introduce evidence."

unable to comprehend his own situation in reference to the proceedings, or is unable to assist in his defense in a rational or reasonable manner." He concluded that defendant had capacity to stand trial.

There was no error in this conclusion. "The test of a defendant's mental capacity to stand trial is whether he has, at the time of trial, the capacity to comprehend his position, to understand the nature and object of the proceedings against him, to conduct his defense in a rational manner, and to cooperate with his counsel to the end that any available defense may be interposed."[6] *State v. Cooper*, 286 N.C. 549, 565, 213 S.E. 2d 305, 316 (1975); *accord, State v. Buie*, 297 N.C. 159, 254 S.E. 2d 26, *cert. denied*, 444 U.S. 971 (1979). When the trial judge determines the question of a defendant's capacity without a jury the court's findings of fact, if supported by the evidence, are conclusive on appeal. *State v. Willard*, 292 N.C. 567, 234 S.E. 2d 587 (1977); *State v. Cooper, supra.* Here although defendant had been wounded and was apparently experiencing headaches as a result of his injury, there was uncontradicted expert opinion that he was competent to stand trial. This opinion was sufficient to support the trial judge's conclusion to the same effect. *See State v. Buie, supra.* This assignment of error is overruled.

III

[6]  Defendant's third assignment of error challenges a number of evidentiary rulings in this language:

"His Honor erred in overruling defendant's timely objections and motions to strike to improper questions and testimony presented by the district attorney."

Under this assignment defendant lists fourteen exceptions. An examination of the record and defendant's brief reveals that the exceptions relate variously to different legal issues. In his brief defendant challenges under this assignment of error the admission of various items of evidence on the ground that they were, respectively, hearsay, irrelevant, admitted without laying a prop-

---

6. As set out in G.S. 15A-1001, the test is whether "by reason of mental illness or defect [the defendant] is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner."

er foundation, admitted without appropriate limiting instructions, admitted as expert opinion without properly qualifying the expert.

This assignment of error, purporting to raise a number of different legal issues, is insufficient under our Rules of Appellate Procedure to raise any of them. Rule 10(c) requires, among other things, that "[e]ach assignment of error . . . shall, so far as practicable, be confined to a single issue of law [and] shall state plainly and concisely and without argumentation the basis upon which error is assigned . . . ." This much of Rule 10(c) simply restates in part "the basic function and desired form of the assignment of error as developed in judicial decisions over the years." Commentary, App. R. 10(c). Defendant's assignment of error here does not state "plainly and concisely and without argumentation the basis upon which error is assigned." Furthermore it attempts to present several different questions of law. An assignment of error which "attempts to present several different questions of law in one assignment [is] . . . broadside and ineffective." *State v. Blackwell*, 276 N.C. 714, 721, 174 S.E. 2d 534, 539, *cert denied*, 400 U.S. 946 (1970); *State v. Kirby*, 276 N.C. 123, 171 S.E. 2d 416 (1970); *State v. Chavis*, 24 N.C. App. 148, 195, 210 S.E. 2d 555, 584 (1974), *cert. denied*, 287 N.C. 261, 214 S.E. 2d 434 (1975), *cert. denied*, 423 U.S. 1080 (1976) and cases there cited.

We have, nonetheless, carefully examined all of the evidentiary rulings complained of and find no error in any of them.

This assignment of error is overruled.

IV

[7] Defendant next assigns error to the admission of SBI Agent Newell's testimony regarding defendant's incriminating statements made in the hospital emergency room. Defendant contends the statements should be excluded because defendant "must have been" under the influence of pain-killing drugs so that he could not have knowingly and understandingly made a statement. Before permitting this testimony the trial court conducted a lengthy *voir dire* hearing concerning defendant's mental and physical condition at the time he made this statement. The state's evidence tended to show that defendant was alert, responsive and coherent. His attending physician gave permission for defendant

to be interviewed. Defendant "did not appear to be sleepy or confused nor did he hesitate to answer questions at any time." The trial court made extensive findings of fact in accord with this evidence. Defendant did not except to any of these findings. From these findings the trial court correctly concluded that the statement "was made freely, voluntarily, understanding [sic] and knowingly . . . ." There is, consequently, no merit to this assignment; it is overruled.

V

By his fifth assignment of error, defendant contends that because the state failed to comply with several discovery requests certain related evidence should not have been admitted.

A

[8]   On 20 July 1979 defendant through counsel requested the district attorney to provide him copies of or permit him to inspect all test results, physical evidence and written or oral statements made by defendant.[7] In a letter dated 9 August 1979 the district attorney informed defendant's counsel that Lt. Gay had been requested to provide him with all laboratory reports which might be received from the SBI. Enclosed in this letter was a summary of defendant's oral statement. Apparently, however, sometime after 9 August SBI Agent Newell prepared another summary of defendant's statement for his own use in order to refresh his memory at trial. Newell did use it for that purpose at trial.

Upon discovering this second summary, defendant moved to strike agent Newell's testimony on the ground defendant had not been provided a copy of the second summary. After a *voir dire* on this question the court denied the motion to strike. We find no error in this ruling. Neither summary appears in the record on appeal. Obviously the existence of a summary other than that provided defendant is significant only if one summary materially differed from the other. Defendant does not contend that any such difference existed. We cannot presume there was a difference.

---

7. This request was in accordance with our statutory discovery procedures. *See* G.S. 15A-903(a)(2), (d), (e).

B

[9]  Defendant urges error in the trial court's failure to suppress testimony concerning the results of tests performed on the deceased's bedcovers and on a .22 caliber bullet removed from her body. Defendant, as noted above, had sought discovery of this evidence. Apparently the district attorney was not aware of its existence until several days before trial, at which time he notified defendant's counsel. The test results were not given to the district attorney until the third day of trial. Defendant's counsel was immediately notified. The trial court declared a recess and gave defendant an opportunity to inspect this evidence and to examine the state's witnesses who would testify about it. The court also offered to continue the recess for "such additional time as you [defendant] deem would be reasonable to see what you can pursue or develop." Defense counsel, noting that "I've looked for ballistics experts before and there are just not any," doubted that he could locate such an expert within a reasonable time. After additional discussion the trial court refused to suppress the evidence because defendant made no showing of prejudice. Trial then continued and the complained of evidence was offered.

We find no error in this procedure. Even if we assume, for purposes of argument, that the state failed to comply with the discovery statute, exclusion of evidence is but one of several sanctions authorized by G.S. 15A-910.[8] Another is to "grant a continuance or recess." The sanction to be imposed rests in the trial judge's discretion and, absent abuse, is not reviewable on appeal. *State v. Hill*, 294 N.C. 320, 240 S.E. 2d 794 (1978); *State v. Thomas*, 291 N.C. 687, 231 S.E. 2d 585 (1977). We find no abuse here. Given that the district attorney notified defendant three

---

8. G.S. 15A-910 provides:

  "*Regulation of discovery—failure to comply.*—If at any time during the course of the proceedings the court determines that a party has failed to comply with this Article or with an order issued pursuant to this Article, the court in addition to exercising its contempt powers may

  (1) Order the party to permit the discovery or inspection, or

  (2) Grant a continuance or recess, or

  (3) Prohibit the party from introducing evidence not disclosed, or

  (4) Enter other appropriate orders.

days before trial of the evidence and knew of it himself no sooner, the trial court's ordering a recess to permit defendant to examine the evidence and question the state's witnesses and offering to continue the recess to allow defendant to locate a ballistics expert was well within the due exercise of that discretion permitted the court under the circumstances. This assignment of error is, therefore, overruled.

## VI

[10]  Defendant next assigns as error the denial of his motion to dismiss for evidentiary insufficiency at the conclusion of all the evidence. We think the evidence was sufficient to be submitted to the jury on the question of defendant's guilt of second degree murder.

The state's evidence tended to show that when asked by SBI Agent Newell what happened at Dorothy Smith's house, defendant said, simply, "I shot her." Newell testified, "I asked him where was he when he shot her and he said he was sitting on the side of the bed when he shot her. He said he shot her with his gun. I asked him how long had he been living with Dorothy Smith and he said that he had been going with her about five or six years but he had only been living with her for seven months. . . . I asked him where he went when he left Dorothy Smith's house and he said he headed north and had a flat tire, tried to get someone to help him get the car back on the road. I don't recall asking him any other questions." The state also offered evidence that after he shot the deceased, defendant awakened other occupants of the dwelling and asked them to take him to the hospital because he suffered from a severe headache. He did not mention the shooting. He then fled the dwelling alone. When the other occupants discovered the deceased, lying naked upon her bed mortally wounded, they attempted to telephone for help but discovered the cords to both telephone extensions had been cut. Additional evidence showed that there was a bullet hole in each of three pieces of bedcovering taken from the bed in which the deceased was found. The bullet which made the holes was fired from a distance of not more than one foot. The deceased died from a single bullet wound to the brain.

Defendant's testimony, essentially, was that he and the deceased were sleeping together on the night he killed her. He

touched her on the shoulder. She reacted by striking him with her fist. She then attacked him with a knife and they struggled for several minutes on the bed for possession of the knife. During this struggle the deceased kicked him off the bed. He grabbed his gun off a dresser where he had earlier placed it. The deceased got up from the bed and lunged at him. "I just reached . . . and when I grabbed her hand and started to push her back, the gun went off and hit her. She still had the knife in her hand then. She fell back on the bed . . . and I sat there I don't know how long." Defendant testified further, "I sat there drinking . . . trying to get myself together . . . and I guess I panicked." He said the deceased "called Nellie Mae's name once or twice" and that he decided "the best thing to do is try to get out of here before the kids wake up and say we've been in a fight and end up hurting me or . . . making me hurt them." Defendant said, "when the gun went off the covers were partly across her legs and I took and throwed them back up before I left out. I don't know that the shot that hit her passed through the bedcovers but it could have because the cover was over her when she got up. They might have been over her head at that time. I couldn't see, it was dark in there and all I could see was the blade, the knife that she had in her hand. I was watching that more than anything else." Defendant then "got in the car and started for 301 Highway."

Defendant, relying only on a quotation from 4 Strong's North Carolina Index 3d, *Crim. Law* § 106, p. 549, argues that the evidence against him raises "no more than a surmise, suspicion and conjecture of guilt" which is "insufficient . . . even though the suspicion . . . aroused . . . is strong." We disagree.

The legal principles governing a motion for dismissal at the close of all the evidence are well-established. Such a motion is properly denied "when there is any evidence, whether introduced by the State or defendant, which will support the charges contained in the bill of indictment . . . considering the evidence in the light most favorable to the State and drawing every reasonable inference, deducible from the evidence, in favor of the State." *State v. Everhart*, 291 N.C. 700, 702, 231 S.E. 2d 604, 605-06 (1977). All contradictions and discrepancies in the evidence are resolved in the state's favor. *State v. Hankerson*, 288 N.C. 632, 220 S.E. 2d 575 (1975), *reversed on other grounds*, 432 U.S. 233 (1977). Defendant's evidence may be considered insofar as it

merely explains or clarifies or is not inconsistent with the state's evidence. *State v. Furr*, 292 N.C. 711, 235 S.E. 2d 193 (1977); *State v. Bruton*, 264 N.C. 488, 499, 142 S.E. 2d 169, 176 (1965). If *all* the evidence shows nothing but an accidental killing, *State v. Griffin*, 273 N.C. 333, 159 S.E. 2d 889 (1968); *State v. Church*, 265 N.C. 534, 144 S.E. 2d 624 (1965), or a killing in self-defense, *State v. Johnson*, 261 N.C. 727, 136 S.E. 2d 84 (1964); *State v. Carter*, 254 N.C. 475, 119 S.E. 2d 461 (1961), homicide charges must be dismissed.

In order for the evidence to support the charge, there must be "substantial evidence . . . of every essential element that goes to make up the crime charged," *State v. Allred*, 279 N.C. 398, 404, 183 S.E. 2d 553, 557 (1971), or evidence from which a rational jury may find beyond a doubt the existence of all such elements. *Jackson v. Virginia*, 443 U.S. 307 (1979). Second degree murder is the "unlawful killing of a human being with malice, but without premeditation and deliberation." *State v. Rogers*, 299 N.C. 597, 603, 264 S.E. 2d 89, 93 (1980). We said in *State v. Foust*, 258 N.C. 453, 458, 128 S.E. 2d 889, 893 (1963):

> "Malice as an essential characteristic of the crime of murder in the second degree may be either express or implied. 40 C.J.S., Homicide, sec. 16, p. 862; 26 Am. Jur., Homicide, sec. 41, p. 185. This Court said in *S. v. Benson, supra*:
>
>> 'Malice is not only hatred, ill-will, or spite, as it is ordinarily understood—to be sure that is malice—but it also means that condition of mind which prompts a person to take the life of another intentionally without just cause, excuse, or justification. *S. v. Banks*, 143 N.C. 652. It may be shown by evidence of hatred, ill-will, or dislike, and it is implied in law from the killing with a deadly weapon; and a pistol or a gun is a deadly weapon. *S. v. Lane*, 166 N.C. 333.'"

An unlawful killing means a killing without justification or excuse. *See State v. Hankerson, supra.*

The evidence in this case considered in its entirety does more than permit surmise, suspicion or conjecture as to defendant's guilt of second degree murder. It constitutes substantial

evidence that defendant shot the deceased unlawfully and with malice. Considering the evidence in the light most favorable to the state, and drawing all reasonable inferences in the state's favor, we conclude that the jury could reasonably find: Defendant fatally shot deceased, who was in bed under the bedcovers, with a deadly weapon at close range in the head. Defendant then watched deceased call for help but did nothing to assist her. Thereafter he cut the telephone wires and conversed with other occupants of the dwelling without mentioning the shooting. He then fled the dwelling. Defendant's actions after the shooting, taken together, are not normally characteristic of one who has killed accidentally or in self-defense. This conduct and the manner in which the shooting occurred as shown by evidence favorable to the state constitute sufficient evidence of defendant's guilt of second degree murder to be submitted to the jury.

This is not a case where all the evidence points to an accidental or self-defense shooting. Defendant's version of the incident does more than merely explain or clarify the evidence favorable to the state. It is inconsistent with much of that evidence and the inferences which can be reasonably drawn therefrom. At least the evidence favorable to the state casts a different light on the homicide than that provided by defendant's testimony tending to show that he shot Dorothy Smith either accidentally or in self-defense. The court, therefore, is not bound by this testimony. *See generally Jackson v. Virginia, supra; State v. Freeman*, 295 N.C. 210, 244 S.E. 2d 680 (1978); *State v. May*, 292 N.C. 644, 235 S.E. 2d 178, *cert. denied*, 434 U.S. 928 (1977); *State v. Hankerson, supra; State v. Bolin*, 281 N.C. 415, 189 S.E. 2d 235 (1972); *State v. Cooper*, 273 N.C. 51, 159 S.E. 2d 305 (1968); *State v. Bright*, 237 N.C. 475, 75 S.E. 2d 407 (1953); *State v. Brabham*, 108 N.C. 793, 13 S.E. 217 (1891). Defendant's motion to dismiss at the close of all the evidence was, therefore, properly denied.

## VII

[11] Defendant by his seventh assignment of error contends the trial court erred in denying his motion for mistrial. Deputy Sheriff Elmer Ballance testified that he picked up some exhibits from the SBI laboratory in Raleigh. In response to the prosecutor's question, "what did you do at that time?", Ballance answered, "I left the lab and went to Central Prison and picked

up the defendant." Defendant's motion to strike this answer was granted and the trial court instructed the jury not to consider the answer nor be influenced by it in reaching their verdict. The trial court said, "[T]hat is something that is immaterial to the guilt or innocence of the defendant and should not have any effect on your decision in this case." After the state's evidence was concluded and the court had denied defendant's motion to dismiss the charges for insufficiency of the evidence, defendant moved for a mistrial.

The motion was based in part on the response of Deputy Sheriff Ballance that he had picked up defendant at Central Prison and in part on other alleged errors which we have already disposed of in a manner contrary to defendant's contentions. The trial court then offered to explain to the jury that defendant was in Central Prison solely for psychiatric evaluation. Defendant declined this offer, whereupon the court denied his motion for mistrial.

This denial was proper. When incompetent evidence is withdrawn from the jury's consideration by appropriate instructions from the trial court, error in its admission is normally cured. *State v. Ruof*, 296 N.C. 623, 252 S.E. 2d 720 (1979); *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976); *State v. Brown*, 266 N.C. 55, 145 S.E. 2d 297 (1965). This is because jurors are assumed to possess sufficient intelligence and character to comply with the cautionary instructions of the trial judge. *State v. Bruce*, 268 N.C. 174, 150 S.E. 2d 216 (1966). There are, of course, some situations in which courts have concluded that juries cannot adequately comply with cautionary instructions. *Bruton v. United States*, 391 U.S. 123 (1968). This is not one of those situations. That defendant refused additional safeguards offered by the trial court supports this conclusion. This assignment of error is overruled.

## VIII

[12] Defendant by his eighth assignment of error contends the trial court erred in excluding certain testimony which he sought to offer. Testifying in his own behalf, defendant stated that he left the crime scene because he was afraid other household members would attempt to harm him upon discovering that he had shot Dorothy Smith. His counsel asked whether other household members had "ever given you any trouble before when

State v. McCoy

you had fights with her [Dorothy Smith]?" Although an affirmative answer would have supported one of defendant's contentions that he fled not to avoid apprehension but to avoid conflicts with other household members, the district attorney's objection to the question was sustained. Defendant's answer, however, was not elicited for the record. This omission is dispositive of defendant's exception since "[a]n exception to the exclusion of evidence cannot be sustained when the record fails to show what the witness would have testified had he been permitted to answer." *State v. Fletcher*, 279 N.C. 85, 99, 181 S.E. 2d 405, 414 (1971); *see also State v. Adams*, 299 N.C. 699, 264 S.E. 2d 46 (1980); *see generally* 1 Stansbury's North Carolina Evidence § 26 at 62 (Brandis rev. 1973). Defendant also contends the trial court erred in sustaining the district attorney's objection to a question concerning whether defendant's headaches were related to his loss of memory. After defendant testified, "Before this, off and on once or twice I have had trouble remembering," his counsel asked, "Are they in any way related to the headaches that you complained about?" Again, defendant's exception must fail since his answer was not elicited for the record.

We are satisfied, furthermore, that even if defendant had been permitted to answer these questions favorably to himself, there is no reasonable possibility that the jury would have reached a different result. *See* G.S. 15A-1443. Defendant fully presented to the jury the fact that one of the reasons he fled the scene was to avoid trouble between himself and others in the household. He testified, "I left the house because if they would have come in there, them kids would have seed that woman hurt and the first thing they would have thought about was trying to hurt me, and I would have been trying to stop them from hurting me and that way they might have got hurt and I didn't want to hurt her." He also told the jury that his loss of memory "occurred at the same time I had headaches in the past." Thus defendant got before the jury testimony which fully supported, respectively, each contention which he says testimony he was not permitted to give would also have supported. This assignment of error is overruled.

## IX

Defendant by his final assignment of error challenges, without any supporting authority in his brief, twelve portions of

the trial court's instructions to the jury. The assignment of error reads: "His Honor erred in instructing the jury as to the law in the State of North Carolina and as to the facts of the case." An examination of the briefs and the record reveal that a number of legal questions purport to be presented by this assignment of error.

This assignment of error fails to comply with Appellate Rule 10(c) for the same reason that the assignment of error discussed in Part III of this opinion fails to comply. It is a broadside exception to the charge and may be overruled on that ground alone. *State v. Coffey*, 289 N.C. 431, 222 S.E. 2d 217 (1976); *State v. Kirby, supra*, 276 N.C. 123, 171 S.E. 2d 416. In *Kirby* this Court considered an assignment of error to the charge which read: "The court erroneously charged the jury as to the facts, law and evidence produced in the case to the prejudice of the defendant . . . ." Justice Huskins, writing for the Court, aptly said, 276 N.C. at 131, 171 S.E. 2d at 422:

> "This assignment—like a hoopskirt—covers everything and touches nothing. It is based on numerous exceptions and attempts to present several separate questions of law—none of which are set out in the assignment itself—thus leaving it broadside and ineffective."

Nevertheless we have again carefully examined all of the challenged instructions and conclude that none involve prejudicial error. We overrule without discussion defendant's assignment of error as it pertains to eleven of his exceptions to the jury instructions.

[13] In order, however, to reiterate an earlier caution we have given concerning one of the instructions here complained of, we do elect to mention it briefly. The instruction was taken from the *North Carolina Pattern Jury Instructions for Criminal Cases.* N.C.P.I.-Crim. § 206.30. The trial judge charged:

> "If the state proves, beyond a reasonable doubt, *or if it is admitted* that the defendant intentionally killed Dorothy Smith with a deadly weapon or that he intentionally inflicted a wound upon Dorothy Smith with a deadly weapon that proximately caused her death, you may infer: first—that the killing was unlawful; and, second—that it was done with malice." (Emphasis supplied).

State v. McCoy

Defendant complains of the language, "or if it is admitted," on the ground that the jury may have understood this instruction to be an expression of the trial judge's opinion that defendant in his testimony somehow admitted that he had intentionally fired the weapon. Defendant, of course, made no such admission, having testified consistently that the weapon discharged accidentally. In *State v. Wilkins*, 297 N.C. 237, 254 S.E. 2d 598 (1979), we considered this very assignment of error in a homicide case much like the one now before us. In *Wilkins* the state offered evidence that defendant, after an argument with his wife, rather inexplicably shot her dead with a pistol. Defendant testified that the pistol accidentally discharged. In that case the judge charged:

> "If the State proves beyond a reasonable doubt or it is admitted that the defendant intentionally killed Marian Wilkins . . . ."

Defendant Wilkins complained that this instruction suggested that he had, while testifying, admitted intentionally shooting his wife when in fact he had made no such admission. We concluded that the instruction was not prejudicial; we cautioned, however, "there was no evidentiary basis for the trial judge to include the clause 'or it is admitted' in the quoted instruction, and the instruction would have been more accurate without it . . . ." *Id.* at 243, 254 S.E. 2d at 602.

So it is here. The instruction, "or it is admitted," should not be given in a case where the defendant does not in open court admit to an intentional shooting. However, as in *Wilkins*, we conclude that the instruction was not prejudicial to the defendant. We are satisfied the jury understood the instruction to be, as it was intended to be, simply a statement of an abstract legal principle, not the trial judge's expression of an opinion regarding defendant's testimony. Therefore had the complained of language been omitted there is no reasonable possibility that the jury would have reached a different result. *See* G.S. 15A-1443.

Defendant having failed to show prejudicial error, the verdict and judgment will not be disturbed.

No error.

Justice CARLTON concurring.

I concur in the result reached by the majority. However, I wish to note that I consider the majority's extensive discussion of the question whether the Sixth Amendment's right to speedy trial attaches at the time the arrest warrant is issued to be pure dictum.

Chief Justice BRANCH, Justices HUSKINS and MEYER join in this concurring opinion.